IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

STATE OF SOUTH CAROLINA
c/o Attorney General ALAN WILSON
Rembert Dennis Building, Room 519
1000 Assembly Street
Columbia, South Carolina 29201,

        Plaintiff,

v.

UNITED STATES OF AMERICA; and ERIC H. HOLDER, JR., in his official capacity as Attorney General of the United States,

        Defendants.

Civil Action File No. _____

Three-Judge Panel

## COMPLAINT FOR DECLARATORY JUDGMENT

COMES NOW THE STATE OF SOUTH CAROLINA and, pursuant to Section 5 of the Voting Rights Act, 42 U.S.C. Section 1973c (hereinafter, "Section 5 of the VRA") seeks a declaratory judgment that voting-related changes enacted by the South Carolina General Assembly and signed into law by Governor Haley, as provided in Sections 4, 5, 7 and 8 of Act R54 (A27 H3003) (2011), are entitled to preclearance under Section 5 of the VRA. The changes have neither the purpose nor will they have the effect of denying or abridging the right to vote on account of race, color, or membership in a language minority.

Further, enforcement of the voter photo identification requirements provided in Section 5 of Act R54 will not disenfranchise any potential South Carolina voter. Indeed, Section 5 of Act R54 is not materially distinguishable from the Indiana voter identification law whose facial

validity was upheld as constitutional in *Crawford v. Marion County Election Board*, 553 U.S. 181 (2008). Like the Indiana law, South Carolina's photo identification law only places upon the voter an affirmative responsibility to obtain an approved photo identification card and to bring it to the polls, unless one of the exemptions in Section 5 of Act R54 applies, in which case even that minimal burden is excused. Because these photo identification requirements are not a bar to voting but a temporary inconvenience no greater than the inconvenience inherent in voting itself, they do not deny or abridge the right to vote on account of race, color or membership in a language minority within the meaning of Section 5 of the VRA. To deny preclearance or to apply Section 5 of the VRA in the demanding manner in which the United States applied it in denying administrative preclearance would bring into serious question the constitutionality of Section 5 of the VRA. *See Perry v. Perez*, No. 11-713, *et al.*, slip op. at 6–7 (Jan. 20, 2012); *Nw. Austin Mun. Util. Dist. No. 1 v. Holder*, 557 U.S. 193 (2009).

## I. PARTIES

1.      Plaintiff State of South Carolina is a State of the United States of America and brings this action—which it is authorized to bring on behalf of itself and its citizens—pursuant to Section 5 of the VRA and 28 U.S.C. Section 2201.

2.      Defendants are the United States of America and Eric H. Holder, Jr., in his official capacity as Attorney General of the United States. Attorney General Holder is charged with certain responsibilities related to Section 5 of the VRA on behalf of the Department of Justice, including the defense of Section 5 declaratory judgment actions brought in the United States District Court for the District of Columbia.

## II. THE SOUTH CAROLINA VOTER ID LAW ENACTED IN 2011

3. During its 2011 Session, the South Carolina General Assembly enacted R54 (A27 H3003) (2011) on May 11, 2011, and Act R54 was signed into law by Governor Haley on May 18, 2011. Act R54 contains several reforms.

4. State laws that require voters to present approved identification at the polls are common in the United States. *See* http://www.ncsl.org/legislatures-elections/elections-campaigns/voter-id-state-requirements.aspx. No fewer than 31 states require voters to present some type of voter identification document when voting at the polls, and 15 states have enacted laws that require voters to present a photo identification document to vote a regular ballot at the polls. *Id.*

5. Prior to the enactment of Act R54 and since 1988, South Carolina law has provided that registered voters are allowed to vote a regular ballot if they presented to poll officials a state-issued voter registration card without photograph along with the requirement of the voter's signature on the poll list. Presentation of a South Carolina Department of Motor Vehicles (hereinafter, "DMV")-issued driver's license that contained a photograph or a non-driver's license, DMV-issued photo identification card also satisfied the 1988 law. *See* Title 7, Chapter 13 of the South Carolina Code of Laws, Section 710.

6. That 1988 law has previously received federal preclearance under Section 5 of the VRA from the Attorney General of the United States, and it is the benchmark to be used in determining whether the photo identification requirement of Act R54 has a racially discriminatory effect within the meaning of Section 5 of the VRA's preclearance requirements.

7. Section 5 of Act R54 would require South Carolina voters to present one of five forms of photo identification at the polls to be allowed to vote a regular ballot. Those five

forms are a DMV-issued driver's license that contains a photograph, a DMV-issued non-driver's license photo identification card, a United States passport that contains a photograph, a military photo identification card, or a state voter registration card containing a photograph of the voter. Act R54, Section 5(A).

8. In reliance upon the ruling in *Crawford v. Marion County Election Board*, 553 U.S. 181 (2008), Act R54 was enacted and signed into law for the purposes of preventing instances of voting fraud at the polls and enhancing public confidence in the integrity of the electoral process in South Carolina. It was not enacted or signed into law for the purpose of discriminating on the basis of race, color, or membership in a language minority and the enforcement of the provisions of Act R54 will not have a racially discriminatory effect.

9. In an effort to offset any minor inconvenience caused to any voters by enforcement of its photo identification requirements, Act R54 contains exemptions and requires remedial affirmative efforts by State officials to ensure that the photo identification requirements do not treat any voter in a discriminatory fashion.

10. One of Act R54's exemptions provides that in the event a voter appears at the polling place without photo identification and executes an affidavit stating that the voter "suffers from a reasonable impediment that prevents the elector from obtaining a photograph identification," the voter will be allowed to cast a provisional ballot that shall be counted unless the voter's board of registration and elections "has grounds to believe that the affidavit is false." Act R54, Section 5(D)(1)(b) and (2).

11. In addition, if a voter appears at the polling place without photo identification and executes an affidavit stating that the voter "has a religious objection to being photographed," the voter will be allowed to cast a provisional ballot that shall be counted unless the voter's

board of registration and elections "has grounds to believe that the affidavit is false." Act R54, Section 5(D)(1)(a) and (b)(2).

12. Further, another exemption in Section 5 of Act R54 provides that if a voter appears at the polling place without photo identification, that voter will be allowed to cast a provisional ballot that shall be counted as long as the voter returns to his board of registration and elections and presents an acceptable photo identification prior to the time the election in which he cast the provisional ballot has been certified. Act R54, Section 5(C)(1).

13. Pursuant to Sections 4 and 6 of Act R54, free special photo identification cards shall be issued to any persons seventeen years of age or older by the South Carolina Election Commission, and these free photo identification cards will be acceptable identification at the polls.

14. In accordance with Section 7 of Act R54, the South Carolina Election Commission will undertake a number of training, public education and other outreach activities concerning the requirements of Act R54 that will inform voters of the photo identification requirements in Act R54.

15. Pursuant to Section 8 of Act R54, the South Carolina Election Commission is required to create a list of all registered voters who are qualified to vote "but do not have a South Carolina driver's license or other form of identification containing a photograph issued by" the DMV. The list is to be made available to any person registered to vote upon request.

16. Act R54 does not alter or amend the process of voting absentee by mail which does not require photo ids for mailed ballots.

17. In addition to the numerous provisions of Act R54 that mitigate or eliminate any purported discriminatory effects, Governor Haley implemented a program to provide South

Carolina residents in need of photo identification free rides to local DMV offices on September 28, 2011. Approximately two dozen South Carolina residents participated in the program.

### III. THE ADMINISTRATIVE REVIEW OF ACT R54

18.     South Carolina is a "covered jurisdiction" under Section 5 of the Voting Rights Act, and must accordingly obtain administrative preclearance from the Attorney General or a declaratory judgment from this Court before implementing any changes to its voting procedures.

19.     On June 28, 2011, Attorney General Wilson submitted Act R54 to the United States Department of Justice for administrative preclearance.

20.     On December 23, 2011, South Carolina was notified by a letter from Thomas E. Perez, Assistant Attorney General for Civil Rights, that on behalf of the Attorney General he was interposing an objection to Section 5 of Act R54 on the grounds that the enforcement of its photo identification requirements would have a discriminatory effect upon non-white voters. The Attorney General failed to make a preclearance determination regarding Sections 4, 7 and 8 of Act R54, and failed to assess whether those provisions mitigate or eliminate any purported discriminatory effects.

21.     This December 23 objection letter from the Assistant Attorney General for Civil Rights reflects a position that any voting change that imposes any minor inconvenience upon a person's ability to vote and whose enforcement will have any adverse impact against non-white voters constitutes a "denial" or "abridgement" of the right to vote within the meaning of Section 5 of the VRA. Within the context of a voter photo identification requirement, that position conflicts with the Supreme Court's ruling in *Crawford v. Marion County Election Board.*

22. Section 5 of the VRA does not prohibit covered jurisdictions from enacting generally applicable voting laws that are aimed at preventing voter fraud, such as Section 5 of Act R54, that involve, at most, a minor inconvenience on the exercise of the right to vote. Such is especially the case where, as here, the covered jurisdiction has mitigated any potential inconveniences through the enactments of other provisions that offer free identification cards to voters and create exemptions to the requirement that a voter show a photo identification document at the polls.

23. This December 23 objection letter also does not properly recognize that Act R54 provides exemptions for enforcements of its photo identification requirements, such as recognition of religious objections to being photographed, recognition of reasonable impediments to obtaining a government-issued photo identification document, the use of provisional ballots, and the providing of government-issued photo identification documents free of charge. These exemptions in Act R54 render any temporary disparity in the racial composition of the group of individuals without qualifying voter IDs entirely transitory and mitigate any minor inconveniences placed upon the voters. DOJ's failure to recognize this point squarely conflicts with the Supreme Court's ruling in *Crawford*. *See* 553 U.S. at 197–200 (holding that free identification cards and the ability to cast provisional ballots "mitigate[]" any potential burdens on voters).

24. South Carolina brings this action pursuant to 42 U.S.C. Section 1973c and 28 U.S.C. 2201, seeking a declaratory judgment that the enforcement of the photo identification requirements of Act R54 neither has the purpose nor will have the effect of denying or abridging the right to vote on account of race, color, or membership in a language minority.

## IV. JURISDICTION AND VENUE

25.     This Court has subject matter jurisdiction under Section 14(b) of the Voting Rights Act, as amended, 42 U.S.C. § 1973, and under 28 U.S.C. § 1331, because this action arises under the Constitution and laws of the United States. This Court has jurisdiction to render declaratory relief under 28 U.S.C. § 2201.

26.     Venue is proper in this Court pursuant to Section 5 of the Voting Rights Act and 28 U.S.C. § 2284. This action is properly determinable by a three judge district court in accordance with Section 5 and 28 U.S.C. § 2284.

## V. CAUSE OF ACTION

### Count One: Declaratory Judgment for Preclearance For Sections 4, 5, 7 and 8 of Act R54

27.     The State of South Carolina re-alleges, adopts, and incorporates by reference paragraphs 1 through 26 above.

28.     The photo identification changes in Sections 5 of Act R54 were adopted by the South Carolina General Assembly and signed into law by Governor Haley for the purpose of preventing instances of voting fraud and enhancing public confidence in the integrity of the electoral process in South Carolina. Those changes apply equally to voters of all races, and were not adopted for any racially discriminatory purpose.

29.     Under South Carolina's existing or benchmark practices under the 1988 law, voters must bring either a government-issued voter registration card without photograph or other government-issued photo identification documents to the polling place to be allowed to vote a regular ballot. The change in Act R54 that requires voters to present a government-issued photo identification at the polls and further allows voters to vote by provisional ballot under the

8

exemptions in Section 5 of Act R54 will not lead to a retrogression in the position of non-white voters compared to the benchmark. Nor will the enforcement of the photo identification requirement have the effect of denying or abridging the right to vote on account of race, color, or membership in a language minority.

30. The exemptions to the requirement for the presentation of photo identification in Section 5 of Act R54, the issuance of free photo identification cards provided in Sections 4 and 6 of Act R54, and the training, outreach and the public education provisions in Section 7 were done for the purpose of off-setting any potential inconvenience that Act R54's photo identification requirement might cause any voter, and were not adopted for any racially discriminatory purpose.

31. When compared to South Carolina's existing or benchmark practices, the enforcement of the exemptions in Section 5 of the Act R54 that allows voters to cast provisional ballots even though they are unable to show a government-issued photo identification document at the polls will not lead to a retrogression in the position of non-white voters and will not have the effect of denying or abridging the right to vote on account of race, color, or membership in a language minority.

32. The covered voting changes in Act R54 do not and will not prohibit any voter in South Carolina from voting for or electing his or her preferred candidate of choice.

33. The covered voting changes in Act R54 apply uniformly to all South Carolina voters regardless of race, color, or membership in a language minority.

34. Enforcement of the generally applicable voter photo identification requirements provided in Section 5 of Act R54 does not disenfranchise any potential voters as did, for example, the enforcement of character and literacy tests for voter registration that were

commonly used prior to enactment of the VRA and were suspended by it. South Carolina's photo identification law does not bar anyone from voting, but merely imposes on voters a responsibility to obtain an approved photo identification card and to bring it to the polls unless one of the exemptions in Section 5 of Act R54 applies. Therefore, these voter photo identification requirements are at most a temporary inconvenience to some voters who must obtain acceptable photo identification before voting. Indeed, the minor burdens imposed by the voter identification law are no greater than the inherent inconveniences associated with voting—such as the requirement that citizens register to vote before election-day. Because these photo identification requirements are not a bar to voting but, at most, a minor inconvenience to some voters, they do not have a racially discriminatory effect within the meaning of Section 5 of the VRA relied upon by the Government in interposing its objection to Section 5 of Act R54.

35.     This Court should adopt a reasonably permissible construction of Section 5 of the VRA that preclears South Carolina's voter photo identification requirements and thereby avoids the grave constitutional concerns recognized by the Supreme Court in *Northwest Austin Municipal Utility District Number One v. Holder*, 557 U.S. 193 (2009). The Supreme Court has expressly upheld voter identification requirements in non-covered jurisdictions. *See Crawford*, 553 U.S. at 203 (opinion of Stevens, J.) (holding that Indiana's voter identification law was a "neutral, nondiscriminatory regulation of voting procedure"); *id.* at 204–05 (Scalia, J., concurring in the judgment) (holding that the Indiana law was a "generally applicable, nondiscriminatory voting regulation"). Yet South Carolina is barred from implementing an almost-identical law, solely because it is covered by Section 5—based on nearly 50-year-old evidence of discrimination that was remedied long ago.

36. If Section 5 of the VRA is interpreted to prohibit South Carolina's Act R54, it will create a situation in which similarly situated, but non-covered States may enact voting-fraud prevention legislation while covered States are barred from doing so. This would create the anomalous situation in which covered jurisdictions would be precluded from enacting legislation that the Supreme Court has found to be perfectly constitutional in a non-covered State. Such a reading of Section 5 of the VRA would raise serious constitutional concerns whether Section 5 of the VRA violates South Carolina's right to equal sovereignty and should be avoided.

37. The enforcement of the covered voting changes provided for in Act R54 will not result in any discriminatory effect, and this Court should also adopt a reasonable permissible construction of Section 5 of the VRA that permits preclearance of Act R54 and thereby avoids the grave constitutional question were preclearance to be denied on the basis of a constitutionally impermissible discriminatory effect theory.

38. The State of South Carolina is entitled to a judgment that the covered voting changes in Act R54 have neither the purpose nor will have the effect of denying or abridging the right to vote on account of race, color, or membership in a language minority under Section 5 of the VRA, and that South Carolina may administer these covered changes without further delay.

WHEREFORE, the State of South Carolina respectfully requests that this Court:

A. Convene a three-judge district court to hear the matters raised in this Complaint;

B. Enter a declaratory judgment that the covered voting changes in Sections 4, 5, 7, and 8 of Act R54, neither have the purpose nor will have the effect of denying or abridging the right to vote on account of race, color, or membership in a language minority and

may be administered by South Carolina without impediment on account of Section 5 of the VRA; and

      C.    Award the State of South Carolina its costs and grant such other relief as the Court may deem just and proper.

Respectfully submitted,

/s/ Paul D. Clement

Paul D. Clement
DDC Bar No. 433215
BANCROFT PLLC
1919 M Street, N.W.
Suite 470
Washington, D.C. 20036
(202) 234-0090

Alan Wilson
*Attorney General of South Carolina*
Rembert Dennis Building, Room 519
1000 Assembly Street
Columbia, South Carolina 29201
(803) 734-3970

February 8, 2012