**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

STATE OF SOUTH CAROLINA,

     *Plaintiff,*

     v.

UNITED STATES OF AMERICA; and
ERIC H. HOLDER, JR., in his official capacity
as Attorney General of the United States,

     *Defendants*,

SOUTH CAROLINA STATE CONFERENCE
OF THE NAACP, KENYDA BAILEY,
CHARMAINE BEAL, KIAKA DAVIS, EVIN
PERCIVAL, AND SEQUIOA WALLER,

     *Proposed Defendant-Intervenors*.

Civ. No. 1:12-cv-00203-CKK-BMK-JDB

**STATEMENT OF POINTS AND AUTHORITIES OF PROPOSED INTERVENORS
THE SOUTH CAROLINA STATE CONFERENCE OF THE NAACP,
KENYDA BAILEY, CHARMAINE BEAL, KIAKA DAVIS,
EVIN PERCIVAL, AND SEQUIOA WALLER,
<u>IN SUPPORT OF THEIR MOTION TO INTERVENE AS DEFENDANTS</u>**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................ ii

PRELIMINARY STATEMENT ......................................................... 1

FACTUAL BACKGROUND .............................................................. 5

ARGUMENT ..................................................................................... 6

I.   Proposed Defendant-Intervenors Should be Permitted to Intervene as of Right Pursuant to Federal Rule of Civil Procedure 24(a) ............................ 6

    A.   Courts Routinely Grant Rule 24 Intervention to Multiple Groups of Affected Voters in Cases Brought under Section 5 of the Voting Rights Act ................................................................................ 7

    B.   Proposed Defendant-Intervenors Satisfy the Requirements to Intervene as of Right Pursuant to Rule 24(a)(2) .......................... 8

        1.   Proposed Defendant-Intervenors' Motion Is Timely ........................... 9

        2.   Proposed Defendant-Intervenors Have Direct, Substantial, and Legally Protectable Interests ................................................. 10

        3.   Proposed Defendant-Intervenors' Interest Will Be Affected by the Disposition of the Litigation ......................................... 11

        4.   Proposed Defendant-Intervenors' Interest May Not Be Adequately Represented by the Present Parties .................................. 12

            a.   The Government's Stake in this Matter is Not the Same as Proposed Defendant-Intervenors' ...................................... 13

            b.   The Dubose and League of Women Voters Defendant-Intervenors Represent Interests That, While Complementary, Are Distinct from those of the Proposed Individual Defendant-Intervenors ........................... 16

        5.   Proposed Defendant-Intervenors Satisfy the Requirements of Article III Standing ...................................................... 17

II.  In the Alternative, Permissive Intervention is Appropriate in this Case .......... 18

CONCLUSION ................................................................................. 20

i

## TABLE OF AUTHORITIES

## <u>CASES</u>

*Allen v. State Board of Elections,*
    393 U.S. 544 (1969) ................................................................................8

*American Horse Protection, Ass'n, Inc. v. Veneman,*
    200 F.R.D. 153 (D.D.C. 2001) ...........................................................6, 7

*Babbitt v. United Farm Workers National Union,*
    442 U.S. 289 (1979)..............................................................................18

*Beer v. United States,*
    374 F. Supp. 363 (D.D.C. 1974),
    *vacated on other grounds,* 425 U.S. 130 (1976) ...................................8

*Bible Way Church of Our Lord Jesus Christ World Wide, Inc. v. Showell,*
    260 F.R.D. 1 (D.D.C. 2009).................................................................10

*Blanding v. DuBose,*
    454 U.S. 393 (1982)..............................................................................15

*Building and Construction Trades Department v. Reich,*
    40 F.3d 1275 (D.C. Cir. 1994).............................................................17

*Chiles v. Thornburg,*
    865 F.2d 1197 (11th Cir. 1989) ...........................................................11

*City of Cleveland v. Nuclear Regulatory Commission,*
    17 F.3d 1515 (D.C. Cir. 1994).............................................................17

*City of Lockhart v. United States,*
    460 U.S. 125 (1983)..............................................................................15

*Commack Self-Service Kosher Meats, Inc. v. Rubin,*
    170 F.R.D. 93 (E.D.N.Y. 1996)......................................................16, 19

*Cook v. Boorstin,*
    763 F.2d 1462 (D.C. Cir. 1985) ...........................................................10

*County Council of Sumter County v. United States,*
    555 F. Supp. 694 (D.D.C. 1983)...........................................................15

*County of San Miguel v. MacDonald,*
    244 F.R.D. 36 (D.D.C. 2007)...............................................................14

ii

*Dimond v. District of Columbia,*
　792 F. 2d 179 (D.C. Cir. 1986) ............................................................................12

*Donaldson v. United States*,
　400 U.S. 517 (1971) ............................................................................................18

*Fiandaca v. Cunningham,*
　827 F.2d 825 (1st Cir. 1987) ...............................................................................16

*Friends of Animals v. Kempthorne,*
　452 F. Supp. 2d 64 (D.D.C. 2006) .......................................................................13

*Fund for Animals v. Norton,*
　322 F.3d 728 (D.C. Cir. 2003) ...................................................................9, 12, 13

*General Telephone Co. of the Northwest, Inc. v. Equal Employment Opportunity
　Commission*, 446 U.S. 318 (1980) .......................................................................14

*Georgia v. Ashcroft*,
　195 F. Supp. 2d 25 (D.D.C. 2002) .......................................................................12

*Hirshon v. Republic of Bolivia*,
　979 F. Supp. 908 (D.D.C. 1997) ..........................................................................10

*Huron Environmental Activist League v. United States Environmental Protection
　Agency,* 917 F. Supp. 34 (D.D.C. 1996) .............................................................19

*Jones v. Prince George's County,*
　348 F.3d 1014 (D.C. Cir. 2003) .............................................................................9

*Military Toxics Project v. Environmental Protection Agency,*
　146 F.3d 948 (D.C. Cir. 1998) .............................................................................17

*Mova Pharmaceutical Corp. v. Shalala,*
　140 F.3d 1060 (D.C. Cir. 1998) .......................................................................9, 17

*Nationwide Mutual Insurance Co. v. National REO Management, Inc.,*
　205 F.R.D. 1 (D.D.C. 2000) .................................................................................10

*Natural Resources Defense Council v. Costle*,
　561 F.2d 904 (D.C. Cir. 1977) .......................................................................12, 13

*New York State v. United States*,
　65 F.R.D. 10 (D.D.C. 1974) ..................................................................................8

*Northwest Austin Municipal Utility District No. One v. Holder,*
　129 S. Ct. 2504 (2009) ....................................................................................15, 20

*Northwest Austin Municipal Utility District No. One v. Mukasey*,
  573 F. Supp. 2d 221 (D.D.C. 2008) ...................................................................8

*Nuesse v. Camp*,
  385 F.2d 694 (D.C. Cir. 1967) ..............................................................6, 14, 19

*Rio Grande Pipeline Co. v. Federal Energy Regulatory Commission*,
  178 F.3d 533 (D.C. Cir. 1999) .............................................................17

*Roeder v. Islamic Republic of Iran*,
  333 F.3d 228 (D.C. Cir. 2003) .............................................................9

*Sandusky County Democratic Party v. Blackwell*,
  387 F.3d 565 (6th Cir. 2004) .............................................................15

*Smoke v. Norton*,
  252 F.3d 468 (D.C. Cir. 2001) .............................................................9

*Smuck v. Hobson*,
  408 F.2d 175 (D.C. Cir. 1969) .............................................................13

*Southern Christian Leadership Conference v. Kelley*,
  747 F.2d 777 (D.C. Cir. 1984) .............................................................17

*Southern Utah Wilderness v. Norton*,
  No. 01-2518 (CKK), 2002 WL 32617198 (D.D.C. June 28, 2002).....................10

*Trbovich v. United Mine Workers of America*,
  404 U.S. 528 (1972).............................................................12, 13, 18

*Turn Key Gaming, Inc. v. Oglala Sioux Tribe*,
  164 F.3d 1080 (8th Cir. 1999) .............................................................6

*United States v. Phillip Morris USA, Inc.*,
  566 F.3d 1095 (D.C. Cir. 2009) .............................................................18

*Virginia v. Reno*,
  117 F. Supp. 2d 46 (D.D.C. 2000) .............................................................8

*Washington Mutual, Inc. v. Federal Deposit Insurance Corp.*,
  659 F. Supp. 2d 152 (D.D.C. 2009) .............................................................14

*Wilderness Society v. Babbitt*,
  104 F. Supp. 2d 10 (D.D.C. 2000) .............................................................6

## STATUTES AND RULES

29 U.S.C. § 483.................................................................................18

42 U.S.C. § 1973b(b) ...........................................................................5

42 U.S.C. § 1973c ...........................................................................1, 5

Fed. R. Civ. P. 24(a) ..........................................................................6

Fed. R. Civ. P. 24(a)(2)......................................................................12

Fed. R. Civ. P. 24(b)(2)................................................................18, 19

Act R54 (A27 H3003) (2011) ...............................................................1

## DOCKETED CASES

*Florida v. Holder*,
    No. 1:11-cv-01428 (D.D.C.) ......................................................7, 20

*Georgia v. Holder*,
    No. 1:10-cv-01062 (D.D.C.) ...............................................8, 14, 20

*Louisiana House of Representatives v. Ashcroft*,
    No. 02-62 (D.D.C.) ......................................................................8

*Shelby County v. Holder*,
    No. 1:10-cv-00651 (D.D.C.) ......................................................8, 20

*Texas v. Holder*,
    No. 1:12-cv-00128 (D.D.C.) ......................................................7, 20

*Texas v. United States*,
    No. 1:11-cv-01303 (D.D.C.) ..........................................................7

## OTHER AUTHORITIES

7C Charles Alan Wright, Arthur Miller and Mary Kay Kane, *Federal Practice
    and Procedure* §§ 1908-09 (2d ed. 1986)......................................11, 12

Proposed Defendant-Intervenors the South Carolina State Conference of the NAACP, Kenyda Bailey, Charmaine Beal, Kiaka Davis, Evin Percival, and Sequioa Waller (collectively, "Proposed Defendant-Intervenors"), by and through their undersigned counsel, respectfully submit this Statement of Points and Authorities in support of their Motion to Intervene as of right pursuant to Rule 24(a)(2) of the Federal Rules of Civil Procedure or, alternatively, for permissive intervention pursuant to Federal Rule of Civil Procedure 24(b)(1).

## PRELIMINARY STATEMENT

The State of South Carolina ("Plaintiff" or "South Carolina") filed this action on February 8, 2012, seeking judicial preclearance of its recently enacted Act R54 (A27 H3003) (2011) ("Act R54," or "voter ID law," or "photo ID law") pursuant to Section 5 of the Voting Rights Act of 1965 ("VRA"), 42 U.S.C. §1973c ("Section 5 of the VRA"). Proposed Defendant-Intervenors move to intervene on behalf of eligible and registered African-American student voters in South Carolina[1] ("Proposed Individual Defendant-Intervenors") and the South Carolina State Conference of the NAACP ("Proposed Organizational Defendant-Intervenor" or "the South Carolina NAACP").

Act R54 will require individuals, such as Proposed Individual Defendant-Intervenors, to produce one of a limited number of specific state-issued pieces of photographic identification ("photo ID") when voting in-person. The photo ID law imposes undue, burdensome limitations on the acceptable forms of photo ID, excluding, for example, student ID cards that Proposed Individual Defendant-Intervenors possess.

Proposed Individual Defendant-Intervenors, Kenyda Bailey, Charmaine Beal,

---

[1]   Proposed Individual Defendant-Intervenor Bailey is a registered voter in South Carolina. Proposed Individual Defendant-Intervenors Beal, Davis, Percival, and Waller have filed applications to register to vote in South Carolina, and are awaiting confirmation of their registration.

Kiaka Davis, Evin Percival, and Sequioa Waller, are African-American residents of South Carolina. Proposed Individual Defendant-Intervenors are registered to vote, or have filed applications to register to vote, in Richland County. All Individual Defendant-Intervenors are students of Benedict College, a historically Black college in Columbia, South Carolina, and one of eight historically Black colleges and universities in South Carolina. The Proposed Individual Defendant-Intervenors do not have the underlying documentation necessary to obtain a state-issued photo ID under Act R54, do not have ready access to the state offices that furnish such ID, or cannot obtain, afford to pay for, or locate those underlying documents without significant burdens, including having to take costly trips to obtain documents from outside of the state, and/or rely on out-of-state family members to find documents. Proposed Individual Defendant-Intervenor Bailey has voted in previous elections in South Carolina, using forms of identification that would not be accepted under Act R54. Proposed Individual Defendant-Intervenors Beal, Davis, Percival, and Waller plan to vote in the November 2012 Election and possess student IDs that are unacceptable for in-person voting under Act R54, but do not possess any of the limited forms of ID that would be accepted. South Carolina's photo ID law will, therefore, effectively disfranchise Proposed Individual Defendant-Intervenors, who seek to exercise their protected right to vote in the upcoming November 2012 Election and many other elections.

Proposed Organizational Defendant-Intervenor South Carolina State Conference of the NAACP ("South Carolina NAACP") is a nonprofit, nonpartisan organization based in South Carolina, and is the local branch of the National Association for the Advancement of Colored People ("NAACP"), a national civil rights organization. The

NAACP and Proposed Organizational Defendant-Intervenor seek to remove all barriers of racial discrimination through democratic processes and the enactment and enforcement of federal, state and local laws securing civil rights, including laws relating to voting rights. The South Carolina NAACP was chartered in 1939, and has grown to include student chapters and youth councils from historically Black colleges and universities throughout the state, as well as other South Carolina colleges and universities. Proposed Organizational Defendant-Intervenors' membership is predominantly African-American, but also includes other minority residents of South Carolina, all of whom reside throughout the state. The South Carolina NAACP has held and has sponsored voter registration and voter education activities for several years, and has been credited with registering thousands of voters throughout South Carolina.

South Carolina's voter ID law will not only undermine the South Carolina NAACP's efforts to make voting more accessible to its members, but it will also require a diversion of the organization's human and financial resources. In particular, Act R54 would require the South Carolina NAACP to expend considerable resources: (a) assessing who among its members and constituency lacks the appropriate IDs, and which alternate IDs each individual needs; (b) planning how to best ensure that each individual knows which IDs he/she needs; and (c) when feasible, providing assistance and transportation to those voters who cannot afford the accepted IDs or underlying documents necessary to secure the accepted IDs, and who do not have ready transportation to state offices providing such IDs. Thus, Proposed Organizational Defendant-Intervenor seeks to intervene in this litigation on behalf of itself as an organization, and as a representative of its members.

Proposed Defendant-Intervenors are collectively committed to defending the voting rights of African-Americans in South Carolina. These voters regard the VRA as an essential piece of federal legislation that safeguards the voting rights of African-Americans, and other racial and language minorities. As members of a class of voters whom the VRA was designed to protect, Proposed Defendant-Intervenors have direct and substantial interests in the outcome of this action.

The Motion to Intervene and accompanying Statement of Points and Authorities is made with Proposed Defendant-Intervenors' understanding of this Court's interest in the efficient disposition of the proceedings in this matter. To that end, Proposed Defendant-Intervenors are committed to (i) avoiding delays or the unnecessary duplication of efforts in areas satisfactorily addressed and represented by Defendants, and (ii) abiding by this Court's March 20, 2012 Order requiring that Intervenors' confer with Defendants prior to filing motions, responses, briefs, or discovery requests, Dkt. Nos. 10 & 11, and its March 21, 2012 Order regarding the parties' obligations to meet and confer and file a Joint Status Report, Dkt. No. 12.

Because Proposed Defendant-Intervenors' substantial interests in the subject matter of this litigation may not be adequately represented by the current parties, and because Proposed Defendant-Intervenors meet all requirements for intervention as of right under Rule 24(a)(2), this Motion should be granted.  In the alternative, the facts and circumstances of this case warrant permissive intervention pursuant to Rule 24(b)(1).

Counsel for Defendant Attorney General Eric H, Holder, Jr., will not oppose permissive intervention by Proposed Defendant-Intervenors. Counsel for the Dubose Defendant-Intervenors, a group of individuals and the Family Unit, Inc., who filed for

intervention on February 24, 2012 (Dkt. No. 7) will not oppose intervention as of right or permissively by Proposed Defendant-Intervenors. Counsel for the State of South Carolina could not be reached by the date of filing of these papers.

## FACTUAL BACKGROUND

South Carolina is covered in its entirety by Section 5 of the VRA, requiring it to submit all of its statewide voting changes for administrative or judicial preclearance before such changes can take effect. 42 U.S.C. §§ 1973b(b), 1973c.

On February 8, 2012, Plaintiff brought this declaratory judgment action seeking judicial preclearance of its recently enacted voter ID law, the provisions of which alter, *inter alia*, the state's existing requirements with respect to the acceptable forms of identification necessary to vote in-person.

Plaintiff, through a submission made to the Department of Justice ("DOJ"), previously sought administrative preclearance of this voter ID law. *See* Compl. ¶¶ 18 *et seq.* The DOJ denied preclearance to this photo ID law on December 23, 2011, finding that South Carolina's data show that "minority registered voters [are] nearly 20% more likely to lack DMV-issued ID than white registered voters, and thus [would be] effectively disenfranchised by Act R54's new requirements." *See* Ex. 1, Letter from Thomas E. Perez, Asst. Atty. Gen., DOJ, to C. Havird Jones, Jr., Asst. Deputy Atty. Gen., South Carolina (Dec. 23, 2011), at 2.

Plaintiff asks this Court to approve its photo ID law under Section 5 of the VRA. For the reasons stated below, intervention by Proposed Defendant-Intervenors is appropriate as of right, pursuant to Fed. R. Civ. P. 24(a)(2) or, in the alternative, permissively, pursuant to Fed. R. Civ. P. 24(b)(1).

**ARGUMENT**

**I.**      **Proposed Defendant-Intervenors Should be Permitted to Intervene as of Right Pursuant to Federal Rule of Civil Procedure 24(a)**

Federal Rule of Civil Procedure 24(a), concerning intervention as a matter of right, states:

> (a) Intervention of Right. On timely motion, the court must permit anyone to intervene who: (1) is given an unconditional right to intervene by a federal statute; or (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a). Federal courts, including those in the D.C. Circuit, have emphasized that Rule 24's intervention requirements should be liberally construed in favor of intervention. *See, e.g.*, *Nuesse v. Camp*, 385 F.2d 694, 702-04 (D.C. Cir. 1967) (recognizing need for liberal application of the rules permitting intervention as of right); *Am. Horse Prot. Ass'n., Inc. v. Veneman*, 200 F.R.D. 153, 157 (D.D.C. 2001) (noting the "liberal and forgiving" nature of the interest prong of the intervention as of right test); *Wilderness Soc'y v. Babbitt*, 104 F. Supp. 2d 10 (D.D.C. 2000) (recognizing D.C. Circuit's liberal approach to intervention); *Turn Key Gaming, Inc. v. Oglala Sioux Tribe*, 164 F.3d 1080, 1081 (8th Cir. 1999) ("Rule 24 is to be construed liberally, and doubts resolved in favor if the proposed intervenor.").

Proposed Defendant-Intervenors' Motion satisfies Rule 24(a)(2)'s requirements for intervention because of the nature of the voting change at issue; the timeliness of the Motion to Intervene; and that Proposed Defendant-Intervenors' significant interests in this action may not be adequately represented by the current parties to the litigation. *See*

*Am. Horse Prot. Ass'n,* 200 F.R.D. at 157-58 (granting intervention where these factors have been satisfied). Proposed Defendant-Intervenors, as eligible minority voting age citizens and an organization that serves these same persons, are intended beneficiaries of the VRA. These factors strongly counsel in favor of granting Proposed Defendant-Intervenors' Motion as of right pursuant to Rule 24(a)(2).

### A. Courts Routinely Grant Rule 24 Intervention to Multiple Groups of Affected Voters in Cases Brought under Section 5 of the Voting Rights Act

Courts routinely grant intervention in Section 5 and other voting rights cases to minority voters and organizations representing their interests, recognizing that they have a strong stake in voting issues and offer important perspectives that bear on the proper interpretation of Section 5 of the VRA. Courts have also recognized that the interests of minority voters and organizations representing them may diverge from the positions of institutional parties, such as the United States or the Attorney General of the United States. Courts have therefore granted intervention to multiple groups of intervenors in a broad range of voting matters, including many recent and on-going declaratory judgment actions. *See, e.g.*, *Texas v. Holder*, No. 1:12-cv-00128, ECF No. 16 (D.D.C. Mar. 15, 2012) (granting multiple motions to intervene  presented by Latino, African-American, and other voters in action for preclearance of voter ID law under Section 5, and challenging constitutionality of Section 5); *Florida v. Holder*, No. 1:11-cv-01428, ECF No. 42 (D.D.C. Oct. 19, 2011) (granting several motions to intervene presented by African-American, Latino, and other minority voters in action for preclearance of voting changes under Section 5, and challenging the constitutionality of Section 5 of the VRA); *Texas v. United States*, No. 1:11-cv-01303, ECF No. 11 (D.D.C. Aug. 16, 2011) (granting

intervention to minority voters in declaratory judgment action to preclear redistricting plan under Section 5 of the VRA); *Georgia v. Holder*, No. 1:10-cv-01062, ECF No. 30 (D.D.C. Aug. 3, 2010) (granting several motions to intervene presented by African-American, Latino, and other minority voters action for a declaratory judgment on voting changes, and challenging the constitutionality of Section 5 of the VRA); *Shelby Cnty. v. Holder*, No. 1:10-cv-00651, ECF No. 29 (D.D.C. Aug. 25, 2010) (granting several motions to intervene by African-American voters in case challenging the constitutionality of Section 5 of the VRA); *Nw. Austin Mun. Util. Dist. No. One v. Mukasey*, 573 F. Supp. 2d 221, 230 (D.D.C. 2008) (granting several motions to intervene presented by African-American, Latino, and other minority voters in case seeking bailout under section 4(a) of the VRA, and challenging the constitutionality of Section 5 of the VRA).[2]

Accordingly, the practice in this district, and others, is to recognize the vital interests of intervening minority voters in VRA actions.

### B. Proposed Defendant-Intervenors Satisfy the Requirements to Intervene as of Right Pursuant to Rule 24(a)(2)

Under Rule 24(a)(2), intervention as of right depends on four factors: (1) the timeliness of the motion; (2) whether the applicant "claims an interest relating to the property or transaction that is the subject of the action;" (3) whether the applicant "is so

---

[2]      For additional examples of voting rights cases in which motions to intervene by organizations and individuals represented by the NAACP Legal Defense and Educational Fund, Inc. ("LDF") have been granted by this Court, *see La. House of Representatives v. Ashcroft*, No. 02-62 (D.D.C. June 6, 2002) (granting coalition of organizations, African American voters, and other voters' motion to intervene in a Section 5 declaratory judgment action seeking preclearance of redistricting plan; voters were represented by LDF); *Virginia v. Reno*, 117 F. Supp. 2d 46 (D.D.C. 2000) (LDF represented intervening voters); *Beer v. United States*, 374 F. Supp. 363, 367 n.5 (D.D.C. 1974), *vacated on other grounds*, 425 U.S. 130 (1976) (LDF represented intervening voters); *N.Y. State v. United States*, 65 F.R.D. 10, 12 (D.D.C. 1974) (LDF represented intervening organization). The grants of intervention to minority voters in these cases are informed by the holding in *Allen v. State Board of Elections*, which found an implied cause of action for private citizens to bring suits enforcing Section 5 of the VRA because they were beneficiaries of the Act. 393 U.S. 544, 557 (1969) ("[t]he guarantee of § 5 . . . might well prove an empty promise unless the private citizen were allowed to seek judicial enforcement of the prohibition;" LDF represented appellant).

situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest;" and (4) whether "existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2). *See Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 731 (D.C. Cir. 2003); *see also Jones v. Prince George's Cnty.*, 348 F.3d 1014, 1017 (D.C. Cir. 2003); *Mova Pharm. Corp. v. Shalala*, 140 F.3d 1060, 1074 (D.C. Cir. 1998). A party seeking to intervene as of right under Rule 24(a)(2) must also demonstrate that it has standing under Article III of the Constitution. Proposed Defendant-Intervenors satisfy each of these requirements.

### 1.   Proposed Defendant-Intervenors' Motion Is Timely

Plaintiff filed its Complaint on February 8, 2012. Defendant has not yet filed an answer to the Complaint.

Timeliness is measured by when the prospective intervenor "knew or should have known that any of its rights would be directly affected by the litigation." *Roeder v. Islamic Republic of Iran*, 333 F.3d 228, 233 (D.C. Cir. 2003). Courts assess timeliness by considering factors such as the applicant's interest in the case, the need for intervention to preserve the applicant's rights, the extent of prejudice to the existing parties, the extent of prejudice to the proposed intervenor if the application is denied, and any unusual circumstances in favor of or opposed to intervention. *See Smoke v. Norton,* 252 F.3d 468, 470-71 (D.C. Cir. 2001) (setting forth timeliness factors).

Proposed Defendant-Intervenors submit the Motion to Intervene, this Statement of Points and Authorities, and Proposed Answer before the issuance of an initial scheduling order, the commencement of discovery, and the filing of dispositive motions. Proposed Defendant-Intervenors' Motion is therefore timely, and granting it pursuant to Rule

24(a)(2) would not unduly prejudice the existing parties, alter the Court's discovery schedule, or any oral argument or hearing date that may be set by the Court. *See e.g.*, *Bible Way Church of Our Lord Jesus Christ World Wide, Inc. v. Showell*, 260 F.R.D. 1, 4 (D.D.C. 2009) (memorandum opinion) (intervention motion filed fifteen months after commencement of litigation is timely); *Nationwide Mut. Ins. Co. v. Nat'l REO Mgmt., Inc.* 205 F.R.D. 1, 6 (D.D.C. 2000) (memorandum opinion) (intervention motion six months after filing of action is timely); *but see, Hirshon v. Republic of Bolivia*, 979 F. Supp. 908, 913 n.5 (D.D.C. 1997) (denying intervention motion as untimely where it was filed 6 months after proposed intervenor became aware of injury). As noted in their Motion, Proposed Defendant-Intervenors will adhere to this Court's March 20, 2012 Order requiring Intervenors and Defendants to consolidate their efforts to avoid duplication and redundancy of filings during the pendency of this action, *see* Dkt Nos. 10-11, and its March 21, 2012 Order regarding the parties' obligations to meet and confer and file a Joint Status Report, *see* Dkt. No. 12.

### 2. Proposed Defendant-Intervenors Have Direct, Substantial, and Legally Protectable Interests

The test for determining the sufficiency of intervenors' interest is a non-stringent, "practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." *Cook v. Boorstin*, 763 F.2d 1462, 1466 (D.C. Cir. 1985) (internal citations omitted); *see S. Utah Wilderness v. Norton*, No. 01-2518 (CKK), 2002 WL 32617198, *5 (D.D.C. June 28, 2002) (applying a "liberal approach" to the Rule 24(a) analysis).

Here, Proposed Defendant-Intervenors have direct, substantial, and legally protectable interests in this action. As young African-American student voters in South

Carolina, Proposed Individual Defendant-Intervenors have an interest in ensuring that Section 5's preclearance process protects against Plaintiff's attempt to undermine their access to the ballot through implementation of Act R54. And, as a membership organization dedicated to protecting the civil and voting rights of African Americans and other people of color in South Carolina, Proposed Organizational Defendant-Intervenor, has a similar interest in ensuring that Plaintiff's proposed voting changes are not implemented to the detriment of its members.

As the Eleventh Circuit recognized, in cases involving challenges to the application of a particular statutory scheme, "the interests of those who are governed by those schemes are sufficient to support intervention." *Chiles v. Thornburg,* 865 F.2d 1197, 1214 (11th Cir. 1989) (*quoting* 7C Charles Alan Wright, Arthur Miller and Mary Kay Kane, *Federal Practice and Procedure* § 1908, at 285 (2d ed. 1986)). The unique experiences and perspectives of Proposed Defendant-Intervenors are relevant to this Court's assessment and analysis of Plaintiff's claims concerning the retrogressive effect of South Carolina's proposed change. Proposed Defendant-Intervenors have a cognizable interest in this action as the issues presented bear directly on their federally-protected voting rights, or, in the case of the South Carolina NAACP, the voting rights of its members.

### 3. Proposed Defendant-Intervenors' Interests Will Be Affected by the Disposition of the Litigation

Proposed Defendant-Intevenors have a vested interest in protecting their ability to vote in South Carolina. As noted, Proposed Individual Defendant-Intervenor Bailey, for example, has previously voted in South Carolina without the burdens of Act R54, relying, therefore, on the state's benchmark practices, which did not require the presentation of

one of a limited number of acceptable forms of photo ID to be able to vote in-person. Proposed Organizational Defendant-Intervenor, the South Carolina NAACP, has itself relied on the state's benchmark practice with respect to photo IDs. Consequently, the disposition of this litigation will have an impact on Proposed Defendant-Intervenors' interests, and specifically on their access to the polls on Election Day.

### 4. Proposed Defendant-Intervenors' Interests May Not Be Adequately Represented by the Present Parties

Proposed Defendant-Intervenors have the right to intervene in this litigation because their interests may not be "adequately represented by the existing parties." Fed. R. Civ. P. 24(a)(2). Proposed Defendant-Intervenors' burden on this point is "not onerous," and is satisfied by a showing that the representation of their interests by the present parties "*may* be inadequate, *not* that representation *will* in fact be inadequate." *See Dimond v. District of Columbia*, 792 F.2d 179, 192 (D.C. Cir. 1986) (emphases added, internal quotation marks and citation omitted); *see also Trbovich v. United Mine Workers of America*, 404 U.S. 528, 538 n.10 (1972) (showing burden should be treated as minimal); *accord Natural Res. Def. Council v. Costle*, 561 F.2d 904, 911 (D.C. Cir. 1977); *Georgia v. Ashcroft*, 195 F. Supp. 2d 25 (D.D.C. 2002) (three-judge panel in state redistricting declaratory judgment action granting intervention to African-American voters pursuant to Fed. R. Civ. Proc. 26(a)(2)); Wright, et al., *supra*, § 1909 (an applicant ordinarily should be permitted to intervene as of right "unless it is *clear* that the party will provide adequate representation for the absentee" (emphasis added)). Even "a partial congruence of interests" is insufficient to "guarantee the adequacy of representation." *Fund for Animals*, 322 F.3d at 737.

In this case, intervention as of right is appropriate because the interests of Proposed Defendant-Intervenors may not be adequately represented by the existing parties.

> **a.  The Government's Stake in this Matter is Not the Same as Proposed Defendant-Intervenors'**

The Government does not have the same stake in this matter as do Proposed Defendant-Intervenors, who are among the intended beneficiaries of the VRA, and whose voting rights would be harmed if this Court were to grant Plaintiff's requested relief. Courts—recognizing that the government must necessarily address the needs of diverse, and sometimes conflicting, groups—have frequently found that the United States and other governmental entities cannot, within the meaning of Rule 24(a)(2), "adequately represent the interests of aspiring intervenors." *Id.* at 736. Government entities are charged with "represent[ing] the interests of the American people," whereas aspiring intervenors, as here, are dedicated to representing their own interests. *Id.*; *see also Natural Res. Def. Council*, 561 F.2d at 912-13; *Smuck v. Hobson*, 408 F.2d 175, 181 (D.C. Cir. 1969); *Friends of Animals v. Kempthorne*, 452 F. Supp. 2d 64, 70 (D.D.C. 2006).

Even an overlap in interests or a general agreement in principles between Proposed Defendant-Intervenors and the Government is insufficient to find that Proposed Defendant-Intervenors' interests will be adequately represented by the Government. "[A] shared general agreement does not necessarily ensure agreement in all particular respects." *Fund for Animals*, 322 F.3d at 737 (quoting *Natural Res. Def. Council*, 561 F.2d at 912) (internal quotation marks omitted); *see also Trbovich*, 404 U.S. at 528 (permitting union member to intervene as of right in a suit brought by the Secretary of

Labor, even though the Secretary was broadly charged with protecting the public interest); *Gen. Tel. Co. of the Northwest, Inc. v. EEOC*, 446 U.S. 318, 331 (1980) (granting individual aggrieved party's motion to intervene in order to protect their personal interests, which may at times be in conflict with those of the EEOC); *Nuesse*, 385 F.2d at 702-04 (although proposed intervenor and Comptroller of Currency had similar interests, their interests were not identical); *Wash. Mut., Inc. v. F.D.I.C.*, 659 F. Supp. 2d 152, 155 (D.D.C. 2009) (although government's and movant bank's positions were similar, permitting intervention because government did not adequately represent bank's interests); *Cnty. of San Miguel v. MacDonald*, 244 F.R.D. 36 (D.D.C. 2007) (cattleman's association aligned in interest with Department of Interior permitted to intervene because its interests were not adequately represented by U.S. government).

Moreover, federal agencies may revise a litigation strategy or theory of the case mid-course, or abandon a prior institutional position altogether. Here, Proposed Defendant-Intervenors should be permitted to intervene so that they will not be subject to the uncertainties associated with whether, or how, the United States, its agencies or the Attorney General of the United States will present arguments concerning the retrogressive effect or otherwise discriminatory aspects of South Carolina's proposed photo ID law.

For example, in a declaratory judgment action brought by the State of Georgia in 2010 for preclearance of a voting change, the Government reversed its position, from denying administrative preclearance of the proposed change, to preclearing a similar statute without public comment during the course of preclearance litigation. *See* Notice By Defendant-Intervenors, *Georgia v. Holder*, No. 1:10-cv-01062, ECF No. 47 (D.D.C.

Aug. 21, 2010). Because the Government may, in the course of litigation, adopt positions that are contrary to those of defendant-intervenors, or may revise its earlier positions, Proposed Defendant-Intervenors cannot rely exclusively on Defendants to consistently and adequately defend their cognizable interests.

The United States and private minority voters have also frequently diverged on the appropriate strategies for ensuring the protection of voting rights. In *Nw. Austin Mun. Util. Dist. No. One*, for instance, defendant-intervenors emphasized different aspects of the Congressional record and presented arguments and evidence that supplemented those provided by the Attorney General in its defense of Section 5. Ultimately, the brief filed by those defendant-intervenors in the Supreme Court was referenced at oral argument in the Supreme Court. *See* Transcript of Oral Argument at 55, 57, *Nw. Austin Mun. Util. Dist. No. One v. Holder*, 129 S. Ct. 2504 (2009) (No. 08-322); *see also City of Lockhart v. United States*, 460 U.S. 125, 130 (1983) (minority intervenors presenting the sole argument in the Supreme Court on behalf of the appellees, while the United States stood in support of the appellants); *Blanding v. DuBose*, 454 U.S. 393, 398 (1982) (minority plaintiffs, but not the United States, appealing and prevailing in a voting rights suit in the Supreme Court); *Cnty. Council of Sumter Cnty. v. United States*, 555 F. Supp. 694, 696 (D.D.C. 1983) (United States and African-American intervenors adopting conflicting positions regarding the application of Section 2 in the Section 5 preclearance process).

Proposed Defendant-Intervenors also bring to the litigation a "[l]ocal perspective on the current and historical facts at issue," which is not likely to be presented by the Government, and which will assist this Court in understanding the precise discriminatory impact of Act R54. *Id.* at 697; *see also Sandusky Cnty. Democratic Party v. Blackwell*,

387 F.3d 565 (6th Cir. 2004) (granting individual voters' motion to intervene in HAVA suit); *Commack Self-Service Kosher Meats, Inc. v. Rubin,* 170 F.R.D. 93 (E.D.N.Y. 1996) (noting that intervenors would bring a different perspective to case that might assist the court); *Fiandaca v. Cunningham*, 827 F.2d 825, 835 (1st Cir. 1987) (likelihood that applicants would introduce additional evidence favors intervention).

> **b.** **The Dubose and League of Women Voters Defendant-Intervenors Represent Interests That, While Complementary, Are Distinct from those of the Proposed Individual Defendant-Intervenors**

Proposed Defendant-Intervenors' interests, while complementary, are distinct from those of the Dubose Defendant-Intervenors and from the League of Women Voters, who filed a Motion to Intervene. *See* Dkt. Nos. 7, 19. Prior to the proposed implementation of South Carolina's law, registered student voters could have used IDs from among a broader list of accepted forms of identification, including—as one Proposed Individual Defendant-Intervenor has used—student IDs. Prior to the passage of South Carolina's photo ID law, the Proposed Individual Defendant-Intervenors planned to vote in South Carolina in November 2012, using, among other forms of ID, their student IDs. However, because Act R54 does not recognize college or university-issued photo IDs, even those issued by public universities and colleges in South Carolina, as among the types of required identification for in-person voting, these students' voting rights are threatened in South Carolina where they live and are, or have, registered to vote.

Proposed Organizational Defendant-Intervenor also has a valuable perspective on voting rights of young African-Americans in South Carolina. The South Carolina NAACP has grown to include student chapters and youth councils from historically

Black colleges and universities throughout the state, as well as other South Carolina colleges and universities. Indeed, one Proposed Individual Defendant-Intervenor is an officeholder in Benedict College's student NAACP chapter.

Proposed Defendant-Intervenors can lend this Court both a modern and historical perspective on voting rights in South Carolina, which will include the perspective of young African-American voters who previously relied on the state's benchmark practices.

### 5. Proposed Defendant-Intervenors Satisfy the Requirements of Article III Standing

Proposed Defendant-Intervenors seek to participate on "an equal footing with the original parties to the suit" and satisfy the standing requirements imposed on all parties. *City of Cleveland v. Nuclear Regulatory Commission,* 17 F.3d 1515, 1517 (D.C. Cir. 1994). As set forth above, Proposed Defendant-Intervenors have concrete and cognizable interests in this litigation that satisfy Article III's demands. *See e.g.*, *Fund for Animals,* 322 F.3d at 733 (finding intervenors satisfied standing requirements because they "would suffer concrete injury if the court granted the relief the petitioners [sought]") (citation and internal quotation marks omitted, alteration in original); *cf. S. Christian Leadership Conference v. Kelley*, 747 F.2d 777, 779 (D.C. Cir. 1984) (stating that Article III's "gloss" on Rule 24 requires an intervenor to have a "legally protectable" interest); *see also Military Toxics Project v. EPA*, 146 F.3d 948, 953 (D.C. Cir. 1998); *Mova Pharm*., 140 F.3d at 1074; *Building & Constr. Trades Dep't v. Reich,* 40 F.3d 1275, 1282 (D.C. Cir. 1994); *Rio Grande Pipeline Co. v. FERC*, 178 F.3d 533, 539-40 (D.C. Cir. 1999) (*quoting City of Cleveland,* 17 F.3d at 1517 (per curiam)).

Proposed Defendant-Intervenors' status as "aggrieved parties" is clear, as each has a vested interest in preventing the implementation of South Carolina's photo ID law. Implementation of Act R54 will frustrate the ability to vote for many African-American voters, like Proposed Individual Defendant-Intervenors, in South Carolina who lack accepted photo IDs under the photo ID law. *See Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979) (imminent harm satisfies the injury-in-fact requirement in suits regarding prospective injury). A favorable ruling from this Court, denying Plaintiff's requested relief, would remedy this injury. As young minority voters, and an organization aimed at protecting the civil and voting rights of minorities more broadly, Proposed Defendant-Intervenors have a "significantly protectable interest" in the outcome of this matter. *Donaldson v. United States*, 400 U.S. 517, 531 (1971); *see Trbovich*, 404 U.S. at 539 (court permitted a union member to intervene in a suit brought by the Secretary of Labor even though the applicable federal statute expressly prohibited union members from initiating such actions on their own). *Id*. at 531-32 (*citing* 29 U.S.C. § 483); *United States v. Phillip Morris USA, Inc.*, 566 F.3d 1095, 1145 (D.C. Cir. 2009) (party need not have a "cause of action" in order to satisfy the requirements of Rule 24(a)).

## II.   In the Alternative, Permissive Intervention is Appropriate in this Case

Although Proposed Defendant-Intervenors respectfully assert their ability to intervene as of right, Rule 24(b) of the Fed. R. Civ. P. provides an alternative basis for intervention. Permissive intervention may be granted under Rule 24(b) "when an applicant's claim or defense and the main action have a question of law or fact in common." Fed. R. Civ. P. 24(b)(2). When assessing a motion for permissive intervention,

the primary consideration is "whether the intervention will unduly delay or prejudice the existing parties." *Commack Self-Service Kosher Meats,* 170 F.R.D. at 106. Courts do not interpret this provision strictly, *Nuesse*, 385 F.2d at 704, and the decision to allow permissive intervention is within the discretion of the court, which considers whether intervention will unduly delay or prejudice the adjudication of the rights of the original parties. Fed. R. Civ. P. 24(b)(2). *Huron Envtl. Activist League v. United States Envtl. Prot. Agency,* 917 F. Supp. 34, 43 (D.D.C. 1996) (permissive intervention was granted where plaintiffs' claims have both questions of law and fact in common with the main action and the court concluded that the intervention would not unduly delay the adjudication of the rights of the original parties).

Here, the requirements for permissive intervention have been met. Proposed Defendant-Intervenors' claims have questions of fact and law in common with those already before this Court. Given the distinct perspective of Proposed Defendant-Intervenors with respect to the experiences of African-American voters in South Carolina, their intervention in this matter will aid this Court's understanding of the underlying legal and factual issues and, thereby, assist in the proper resolution of this action.

Moreover, intervention in this case will not delay the litigation. As discussed above, the Attorney General of the United States has not yet filed an Answer, dispositive motions have not been filed, oral argument has not been scheduled, and Proposed Defendant-Intervenors agree to adhere to the Court's March 20 and March 21 Orders regarding coordination among Parties to this action. As noted, Counsel for Defendant

Attorney General Holder, and for the Dubose Defendant-Intervenors, have advised that they do not oppose permissive intervention by Proposed Defendant-Intervenors.

Finally, counsel for Proposed Defendant-Intervenors have significant experience in VRA litigation, *see, e.g.*, *Nw. Austin Mun. Util. Dist. No. One v. Holder*, 129 S. Ct. 2504 (2009) (mixed claim for bailout and constitutional challenge to the 2006 reauthorization of Section 5 of the VRA); *Shelby Cnty. v. Holder*, No. 1:10-cv-00651 (D.D.C.) (constitutional challenge to the 2006 reauthorization of Section 5), Section 5 declaratory judgment actions before three-judge panels in this district (*e.g.*, *Georgia v. Holder*, No. 1:10-cv-01062 (D.D.C.) (mixed claim for preclearance and constitutional challenge to the application of Section 5 to the State of Georgia), *Florida v. Holder*, No. 1:11-cv-01428 (D.D.C.) (same), *Texas v. Holder*, No. 1:12-cv-00128 (D.D.C.) (same)), and the congressional record that led both to the initial enactment and subsequent reauthorization of the Act. Counsel's substantial experience provides Proposed Defendant-Intervenors with competent, effective representation, and will also very likely benefit this Court in the adjudication of the issues presented in this case.

Taken together, these considerations clearly demonstrate the propriety of the Proposed Defendant-Intervenors' permissive intervention request. This Court should, therefore, grant the Proposed Defendant-Intervenors' alternative request for permissive intervention, in the event that it declines to grant intervention as of right.

## CONCLUSION

For the reasons set forth above, the Motion to Intervene should be granted.

Dated: March 29, 2012

Respectfully submitted,

/s/ Joshua Civin
NAACP LEGAL DEFENSE &
   EDUCATIONAL FUND, INC.
Debo P. Adegbile
Elise C. Boddie
Ryan P. Haygood
Dale E. Ho
Natasha M. Korgaonkar
Leah C. Aden
99 Hudson Street, Suite 1600
New York, New York 10013
(212) 965-2200

Joshua Civin (DC Bar No. 494496)
1444 I Street, NW, 10th Floor
Washington, DC 20005
(202) 682-1300
jcivin@naacpldf.org

FRIED, FRANK, HARRIS,
   SHRIVER & JACOBSON LLP
Douglas H. Flaum
Michael B. de Leeuw
Adam M. Harris
One New York Plaza
New York, New York 10004-1980
(212) 859-8000

Victor L. Goode
NAACP National Headquarters
4805 Mt. Hope Dr.
Baltimore, Maryland 21215
vgoode@naacpnet.org

*Counsel for Proposed
Defendant-Intervenors*

**CERTIFICATE OF SERVICE**

I hereby certify that on March 29, 2012, I filed the foregoing with the Clerk of Court and

served all counsel of record by electronic mail, pursuant to the ECF User's Manual of the U.S.

District Court for the District of Columbia.


/s/ Joshua Civin_____
Joshua Civin (DC Bar No. 494496)
NAACP LEGAL DEFENSE &
 EDUCATIONAL FUND, INC.
1444 I Street, NW, 10th Floor
Washington, DC 20005
(202) 682-1300
jcivin@naacpldf.org

*Counsel for Proposed*
*Defendant-Intervenors*