**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| STATE OF SOUTH CAROLINA,<br><br>    *Plaintiff,*<br>v.<br><br>UNITED STATES OF AMERICA, and ERIC HIMPTON HOLDER, JR., in his official capacity as Attorney General of the United States,<br><br>    *Defendants,*<br><br>    and<br><br>JAMES DUBOSE, *et al.,*<br><br>    *Defendant-Intervenors.* | Civil Action No.<br><br>1:12-CV-203-CKK-BMK-JDB<br>(Three Judge Court) |

**JOINT CONSENT ORDER REGARDING PRESERVATION AND
PRODUCTION OF ELECTRONICALLY STORED INFORMATION
AND OTHER DISCOVERY PROCEDURES**

Having reviewed and considered the parties' joint consent order relating to electronically stored information and other discovery procedures, the Court hereby enters the following ORDER regarding preservation and production of electronically stored information.

**A.**     **Electronically Stored Information.**

    1.     Preservation Not Required for Not Reasonably Accessible Electronic Information.

        a.     Except as provided in subparagraph (A)(1)(b) and paragraph (A)(3) below, the Parties need not preserve the following categories of electronic information for this litigation:

            i.     Data duplicated in any electronic backup system for the purpose of system recovery or information restoration, including but not limited to system recovery backup tapes, continuity of operations systems, and data or system mirrors or shadows, if such data are

routinely purged, overwritten or otherwise made not reasonably accessible in accordance with an established routine system maintenance policy;

ii. Voicemail messages;

iii. Instant messages such as messages sent on AOL Instant Messenger or Microsoft Communicator;

iv. Mobile-to-mobile Short Message Service (SMS) or Multimedia Messaging Service (MMS) messages;

v. Electronic mail sent to or from a Personal Digital Assistant or smartphone (e.g., BlackBerry Handheld) provided that a copy of such mail is routinely saved elsewhere;

v. Other electronic data stored on a Personal Digital Assistant or smartphone, such as calendar or contract data or notes, provided that a copy of such information is routinely saved elsewhere;

vi. Logs of calls made from cellular phones;

vii. Deleted computer files, whether fragmented or whole;

viii. Temporary or cache files, including internet history, web browser cache and cookie files, wherever located;

ix. Server, system or network logs; and

x. Electronic data temporarily stored by scientific equipment or attached devices, provided that the data that is ordinarily preserved as part of a laboratory report is, in fact, preserved in its ordinary location and form.

b.      Notwithstanding subparagraph (a) above, if, as of the date of this Order, either Party has an established policy or practice that results in the routine preservation of any of the categories of information identified in subparagraph (a), such Party shall continue to preserve such information in accordance with its established policy or practice or as may be required by law or regulation; provided however, that the Parties shall have no obligation, in response to general discovery requests, to search for, produce, or create privilege logs for electronically stored information covered by this subparagraph (b).

2.      <u>Obligations Related to "Draft" and "Non-Identical" Documents, Internal Communications Among Counsel and Staff, and Attorney-Client Communications</u>.  For the purposes of preserving potentially discoverable material in this litigation, and for purposes of discovery in this litigation, a "draft" document, regardless of whether it is in an electronic or hard copy form, shall mean, "a preliminary version of a document that has been shared by the author with another person (by email, print, or otherwise) or that the author no longer intends to finalize or to share with another person." In addition, a "non-identical" document is one that shows at least one facial change such as the inclusion of highlights, underlining, marginalia, total pages, attachments, markings, revisions, or the inclusion of tracked changes.  The Parties need not preserve for discovery a document before and after every change made to it, so long as "draft" documents, as defined by this paragraph, are preserved.  A document that is identical on its face to another document, but has small detectable differences in the metadata, shall be considered an identical copy.

Notwithstanding anything to the contrary contained within this Order, the Parties need not preserve for discovery any "draft" documents prepared by, at the direction of, or with the assistance of counsel, the final version of which is expressly contemplated to be filed in

connection with this litigation and to be used for no other ordinary business purpose (e.g., briefs, court memoranda, discovery documents, declarations or affidavits, etc.).  Likewise, the Parties need not preserve for discovery or note on a privilege log any documents (including but not limited to "draft" documents) exchanged solely among counsel and/or individuals working directly on behalf of counsel in connection with this litigation (e.g., paralegals, analysts, litigation support staff, secretaries, etc.).

      3.      <u>No Discovery of Material Not Required To Be Preserved</u>. The Parties will not seek discovery of items that need not be preserved pursuant to paragraphs (A)(1)-(A)(2) above. If any discovery request is susceptible of a construction which calls for the production of items that need not be preserved pursuant to paragraphs (A)(1)-(A)(2), such items need not be provided or identified on a privilege log pursuant to Fed. R. Civ. P. 26(b)(5).

      4.      <u>Preservation Does Not Affect Discoverability or Claims of Privilege</u>. By preserving information for the purpose of this litigation, the Parties are not conceding that such material is discoverable, nor are they waiving any claim of privilege.  Except as otherwise provided in paragraphs (A)(1)(b) and (A)(2), nothing in this Order shall alter the obligations of the Parties to provide a privilege log for material withheld under a claim of privilege.

      5.      <u>Format for Production</u>:  The Parties shall adhere to the following methods of production, unless otherwise agreed upon by the Parties:

            a.      Paper documents: Documents available only in paper or hardcopy format shall be scanned into electronic format and produced via a secure FTP site or other agreed-upon secure media (e.g., encrypted CD-ROM, DVD-ROM, or external hard drive), as provided herein;

    b. Black-and-white paper documents shall be scanned as 300 dpi single-page TIFF files, using CCITT Group IV compression. Documents that contain color (i.e., non-black-and-white) text, photographs, or graphic images shall be scanned in color as 300 dpi single-page JPEG files with the quality setting at high. Each page shall be branded with a unique Bates number, which shall not be an overlay of the image. The Bates numbering convention shall be in the format "XXX _ ########" where "XXX" represents the short character abbreviation for the producing party and "########" represents the eight-digit sequential number of the document being produced by that party. Documents produced by the parties shall be abbreviated as follows: United States = USA; State of South Carolina = SC; individual Defendant-Intervenors DuBose et al., represented by the ACLU: ACLU; organizational Defendant-Intervenor League of Women Voters = LWV. (Thus, for example, the first Bates labeled document produced by the United States should be labeled "USA_00000001".) The images shall be accompanied by: (1) a "cross reference file" which associates each Bates number with its corresponding single-page TIFF image file; and (2) a "text load file" containing comma delimited, double-quotation qualified ASCII text which will populate fields in a searchable flat database environment, containing one line for each document and fields for first and last Bates number. The text generated by Optical Character Recognition (OCR) shall be saved in a text file named for the first Bates number of the document and saved in the same directory as the TIF images. (e.g. USA_00000001.tif and USA_00000001.txt);

    c. Word, WordPerfect, and PDF documents will be converted to images and produced consistent with the specifications in paragraph (A)(5)(b). The text load file accompanying the images shall contain the filename of the document as a metadata field. The

extracted text from each document will be used in place of OCR text, unless the document contains redactions, in which case OCR text may be provided;

        d.     E-mail and attachments should be converted to single-page images and produced consistent with the specification in paragraph (A)(5)(b), except that the text load file shall contain, in addition to first and last Bates numbers and delimited fields that capture the data in each of the following metadata fields: To, From, CC, BCC, Subject, and, for e-mails captured from Microsoft Outlook or Lotus Notes, MessageID.  The text file accompanying the images shall contain the extracted text from the body of the email. If any part of the e-mail is redacted, OCR text may be provided in place of extracted text. Attachments shall be processed as though they were separate documents, and the text load file shall include a field in which the producing Party shall identify, for each e-mail, the bates range of any attachment;

        e.     Microsoft PowerPoint and Excel files, other spreadsheets, digital photographs, Microsoft Windows or Apple media files (.WMV, .AVI, .MPG), and other commonly accessible media files will be produced in native file format in a separate folder on the production media, and the text load file shall contain a field that identifies the file path of the native file corresponding to each document, and the parties shall provide a placeholder TIFF or JPEG image that shows the name of the native file, which shall be the same filename as the Bates number for the placeholder page, except with the appropriate native file format extension (e.g., USA_0000465.jpg would be the placeholder page for a PowerPoint presentation which has the filename of USA_0000465.ppt) ;

        f.     Embedded files shall be treated as though they were separate files, except that the text load file shall include a field in which the producing Party shall identify, for

each document containing an embedded file, the bates range of any such embedded file. This bates range may be identified in the same field as the Bates range of an e-mail attachment.

        g.     The Parties will meet and confer concerning production of other items, including databases, audio recordings, videos, etc. Prior to the complete production of any requested database extracts, if practicable, the producing party will provide a sample subset of the entries to be produced, including all fields requested for production, in the agreed-upon production format. The parties will promptly confer again to confirm the usability of such samples and make any needed technical adjustments prior to the production of the complete database extract; and

        h.     The Parties will meet and confer to identify mutually agreeable search terms for email messages and other electronically stored information.

6.     <u>Other Preservation Obligations Not Affected</u>. Except as specifically provided in this Order, or any subsequent order or stipulation entered in this case, the Parties' statutory and common law obligations to preserve documents or information in connection with this case or for any other purposes, such as pursuant to court order, administrative order, statute, or in response to other anticipated or actual litigation, remain unchanged.

7.     <u>Meet and Confer Requirement</u>. Before filing any motion with the Court regarding electronic discovery or evidence, the Parties will meet and confer in a good faith attempt to resolve such disputes.

**B.**     <u>**Protection of Privileges**</u>**.**

1.     This Order invokes the protections afforded by Rule 502 of the Federal Rules of Evidence.

2. The prosecution and defense of this action will require review and disclosure of substantial quantities of information and documents, including electronically stored information, through the discovery process. As a result, record-by-record preproduction privilege review would likely impose an undue burden on the Parties' resources.

3. Each Party shall examine the files containing documents to be produced and shall screen documents for privilege. Such examination shall be performed with due regard for the likelihood that the files contain privileged documents, but may rely on sampling or electronic searching.

4. If a producing Party determines that it has produced a document upon which it wishes to make a claim of privilege, the producing Party shall within 14 days of such determination give all counsel of record notice of the claim of privilege. The notice shall identify the document(s) that is (are) privileged and the date the document(s) was (were) produced. If the producing Party claims that only a portion of the document is privileged, the producing Party shall provide, along with the notice of the claim of privilege, a new copy of the document with the allegedly privileged portions redacted.

5. A receiving Party is under a good-faith obligation to notify the producing Party upon identification of a document which appears on its face or in light of facts known to the receiving Party to be potentially privileged. Such notification shall not waive the receiving Party's ability to subsequently challenge any assertion of privilege with respect to the identified document. The receiving Party shall provide notice to the producing Party within five business days of identifying potentially privileged information.

6. Upon receiving notice of a claim of privilege on a produced document, the receiving Party must, in accordance with Fed. R. Civ. P. 26(b)(5)(B), promptly sequester the

specified information and any copies it has and may not use or disclose the information, except as provided by Fed. R. Civ. P. 26(b)(5)(B), until the claim is resolved. If the receiving Party disclosed the information before being notified, it must take reasonable steps to prevent further use of such information until the claim is resolved. The Parties will follow the procedure described in Fed. R. Civ. P. 26(b)(5)(B) for documents produced in this litigation regardless of whether the producing Party asserts its claim of privilege during or after this litigation.

       7.      Pursuant to Federal Rule of Evidence 502(d), the disclosure of privileged information or documents in discovery conducted in this litigation consistent with the terms of this order shall not waive the claim of privilege or protection in any other federal or state proceeding.

**C.**    **Costs of Document Production.** Each Party shall bear the costs of producing its own documents.

**D.**    **Expert Discovery.**

       1.      Each Party shall comply with Fed. R. Civ. P. 26(a)(2)(B) with respect to written expert reports.

       2.      No Party shall pursue through discovery, trial subpoena, or otherwise:

       a.      Draft expert reports, regardless of the form of the draft;

          b.      Expert notes;

          c.      Expert correspondence; or

          d.      Communications between a Party's attorney and any witness required to provide a report under Fed. R. Civ. P. 26(a)(2)(B) regardless of the form of the communications, except to the extent permitted under Fed. R. Civ. P. 26(b)(4)(C).

3.      The Parties shall bear the costs of their own testifying experts in responding to discovery, and shall not require the Party seeking discovery to pay the other Party's testifying expert any fee for the time spent in responding to discovery.

**IT IS SO ORDERED.**

This 12th day of April, 2012.

\_\_\_\_/s/_____
BRETT M. KAVANAUGH
UNITED STATES CIRCUIT JUDGE

\_\_\_\_/s/_____
COLLEEN KOLLAR-KOTELLY
UNITED STATES DISTRICT JUDGE

\_\_\_\_/s/_____
JOHN D. BATES
UNITED STATES DISTRICT JUDGE