UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| STATE OF SOUTH CAROLINA,<br><br>    *Plaintiff,*<br>v.<br><br>UNITED STATES OF AMERICA, and ERIC HIMPTON HOLDER, JR., in his official capacity as Attorney General of the United States,<br><br>    *Defendants,*<br><br>    and<br><br>JAMES DUBOSE, *et al.,*<br><br>    *Defendant-Intervenors.* | Civil Action No.<br><br>1:12-CV-203-CKK-BMK-JDB |

**SOUTH CAROLINA'S MEMORANDUM IN OPPOSITION TO DEFENDANT-INTERVENORS' MOTION TO STRIKE THE REBUTTAL EXPERT DISCLOSURE AND REPORT OF SCOTT EUGENE BUCHANAN, PH.D.**

Plaintiff, the State of South Carolina, hereby opposes Defendant-Intervenors' Motion to Strike South Carolina's Declaration and Rebuttal Expert Disclosure of Dr. Scott Eugene Buchanan (Aug. 9, 2012) (Doc. 158). Dr. Buchanan's declaration is offered "in rebuttal to opinions expressed by Drs. Vernon Burton and Theodore Arrington in their initial and supplemental reports in this case." Declaration of Scott Eugene Buchanan, Ph.D. (Doc. 158-2 at 1).[1] And Intervenors do not contest that the State disclosed Dr. Buchanan as a rebuttal expert and served his declaration on the date for rebuttal disclosures and reports set forth in this Court's

---

[1] The various expert reports at issue are cited by the docket number associated with those exhibits as they were attached to Defendant-Intervenors' motion. Pin citations for these reports refer to the page numbers in the reports themselves.

Third Revised Scheduling Order (Doc. 121).  Thus, Defendant-Intervenors' motion is baseless and should be denied.

## I. Dr. Buchanan's Report Is a Proper Rebuttal Report.

Dr. Buchanan's report is a direct rebuttal to the declarations filed by United States expert Dr. Arrington (Docs. 158-3 & 158-4) and Intervenors expert Dr. Burton (Docs. 158-5 & 158-6). As Intervenors themselves emphasize, the Federal Rules define a rebuttal report as one offered "to contradict or rebut evidence on the same subject matter identified by another party."  Fed. R. Civ. P. 26(a)(2)(D)(ii); Intervenors' Motion at 2 n.3.  Taking each of Dr. Buchanan's opinions in turn, they squarely "contradict or rebut" the reports by Drs. Arrington and Burton "on the same subject matter[s]" addressed in those reports:

- "Since 1965, South Carolina has made dramatic progress in the area of minority voting rights regarding the ability of racial minority groups, especially African Americans, to participate in the political process, and to elect candidates of their choice."  (Doc. 158-2 at 3.)

   **This opinion contradicts and rebuts Dr. Burton's contentions regarding the history of state-sponsored discrimination in South Carolina, including his contention that intentional discrimination persists in modern day South Carolina.  (Doc. 158-5 at 5-14, App. B.)**

- "African-Americans in South Carolina have equal access to voting as demonstrated by voter registration statistics and voter turnout rates, which are presented below." (Doc. 158-2 at 3.)

   **This opinion contradicts and rebuts Dr. Burton's contentions regarding the history of state-sponsored discrimination in South Carolina, including his contention that intentional discrimination persists in modern day South Carolina.  (Doc. 158-5 at 5-14, App. B.)**

- "The political empowerment of black elected officials has grown dramatically in the late 20th/early 21st centuries. The most dramatic growth occurred during the decade from 2002-2012."  (Doc. 158-2 at 3.)

   **This opinion contradicts and rebuts Dr. Burton's contentions regarding the history of state-sponsored discrimination in South Carolina, including his contention that recent evidence from the past twelve years shows "systematic,**

> state-sponsored racial discrimination in South Carolina." (Doc. 158-5 at 5-14, App. B.)

- "South Carolina in 2012 is no longer the state that it was in 1965 as it pertains to the ability of African-Americans to participate in the political process and elect candidates of their choice." (Doc. 158-2 at 3.)

**This opinion contradicts and rebuts Dr. Burton's contentions regarding the history of state-sponsored discrimination in South Carolina, including his contention that "the historical experience and background to the enactment of the Voter ID Law can only be fully understood in the context of the State's past." (Doc. 158-5 at 5-14, App. B.)**

- "The past history of racial discrimination in South Carolina does not continue to have present-day effects that affect voter registration, turnout, and the number of black elected officials in the state." (Doc. 158-2 at 3.)

**This opinion contradicts and rebuts Dr. Burton's contentions regarding the history of state-sponsored discrimination in South Carolina, including his contention that the purpose behind Act R54 must be considered in relation to the fact that, "to date, no African American has been elected for South Carolina statewide office." (Doc. 158-5 at 5-14, App. B.)**

- "Both Drs. Arrington and Burton utilize methodologies in their initial and supplemental expert reports that lead them to conclusions about the state's political racial environment and the motivations of the state's political figures that are not reliable." (Doc. 158-2 at 3.)

**This opinion contradicts and rebuts the methodologies utilized by Drs. Arrington and Burton throughout their reports, including those experts' analysis of public sources, as well as the statements and actions of specific legislators. (Doc. 158-3 at 18-31, 44-52; 158-4 at 2-5, 10-24; 158-5 at 15-47; Doc. 158-6 at 1-15.)**

- "Neither Drs. Arrington nor Burton give due consideration to the potential for how photographic identification laws might help to deter voting fraud." (Doc. 158-2 at 3.)

**This opinion contradicts and rebuts Drs. Arrington and Burton's contentions that Act R54's stated purpose to detect and deter voter fraud was pretextual. (Doc. 158-3 at 44-52; Doc. 158-4 at 2-5; Doc. 158-5 at 44-47; 158-6 at 14-15.)**

In addition to Dr. Buchanan's comprehensive analysis contradicting and rebutting the opinions offered in Drs. Arrington and Burton's reports, Dr. Buchanan also presents more than 13 pages of finely-detailed rebuttals to singular points offered by Drs. Arrington and Burton in their reports. (Doc. 158-2 at 28-42.)

3

The fact that South Carolina "bears the burden of proof" (Intervenors' Mot. at 3) as to Act R54's purpose and effect does not mean that Dr. Buchanan's report is improper as a rebuttal report. Dr. Buchanan's report addresses matters that are not part of South Carolina's case-in-chief. Rather, his report rebuts arguments being made by the United States and Intervenors as part of their case, through their experts. His discussion of voter fraud rebuts the contention of the United States' and Intervenors' experts that in-person voter fraud is not a real phenomenon (and hence, so the contention goes, Act R54 must have a nefarious purpose). Likewise, his discussion of the history of racial discrimination in South Carolina rebuts the contention that, because of that history, Act R54 will have an impermissible effect. Dr. Buchanan's report does exactly what a rebuttal report is supposed to do. There is nothing improper about using a different expert in rebuttal than in one's case in chief. *See* Fed. R. Civ. P. 26(a)(2)(D)(ii).

## II. Dr. Buchanan's Report Was Timely Served.

South Carolina timely disclosed and served Dr. Buchanan's rebuttal report on August 6, in compliance with this Court's order. *See* Third Revised Scheduling Order at 2 ("August 6, 2012 - The parties shall serve all rebuttal expert disclosures and reports . . . .") (Doc. 121). Like South Carolina, Defendants also served rebuttal expert reports on August 6. And as Intervenors themselves have acknowledged, all parties were "definitively aware of the August 6th deadline." August 7, 2012 Email from M. Marziani to B. Field (attached as Exhibit 1). Thus, Intervenors' complaint about the timing of the disclosure of Dr. Buchanan's report is meritless.

Moreover, Defendants have ample time to prepare for Dr. Buchanan's deposition. The Department of Justice (not Intervenors) initially noticed Dr. Buchanan's deposition for August 10. In response, South Carolina offered to make Dr. Buchanan available on August 14 or 16. The Department agreed to August 16. Therefore, Intervenors' complaint that they are prejudiced

4

by the State's timely disclosure and service of Dr. Buchanan's report rings hollow. After all, the supposed prejudice apparently derives from the time between the date of rebuttal expert disclosures and the close of expert discovery and trial. But Defendants will have much *more* time to prepare for a deposition of Dr. Buchanan regarding his rebuttal opinions than the State had to prepare for multiple depositions regarding Defendants' own expert rebuttal opinions. Intervenors themselves served a previously-undisclosed rebuttal report from Dr. Kevin Quinn, which addressed topics not covered in his initial report, at 11:25 pm on the August 6 due date, when his deposition was scheduled to begin at 9:00 am the next day. *See* Exhibit 1. The United States also served two rebuttal reports late at night on the due date. Intervenors eventually agreed to offer Dr. Quinn for further questioning (by phone) on August 10, 2012. But even with that additional time, the State still had only two to three and half days before the scheduled depositions of the three experts offering rebuttal opinions to consider three rebuttal reports totaling nearly one-hundred pages combined. The United States and Intervenors will have ten days to prepare for their deposition of Dr. Buchanan. There is no prejudice to them from that.

## CONCLUSION

For the foregoing reasons, Intervenors' motion to strike should be denied and the State should be permitted to offer Dr. Buchanan's expert opinions in rebuttal.

Respectfully submitted,

/s/ H. Christopher Bartolomucci
Paul D. Clement (DC Bar No. 433215)
H. Christopher Bartolomucci (DC Bar No. 453423)
Stephen V. Potenza (admitted *pro hac vice*)
Brian J. Field (DC Bar No. 985577)
Michael H. McGinley (DC Bar No. 1006943)
BANCROFT PLLC
1919 M Street, N.W., Suite 470
Washington, D.C. 20036
(202) 234-0090

Dated:  August 11, 2012            *Counsel for the State of South Carolina*

## CERTIFICATE OF SERVICE

I hereby certify that on August 11, 2012, I filed the foregoing memorandum with the Court's electronic filing system, which will provide notice to all counsel of record.

/s/ H. Christopher Bartolomucci

H. Christopher Bartolomucci
(D.C. Bar No. 453423)