IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| STATE OF SOUTH CAROLINA,<br><br>    *Plaintiff,*<br>v.<br><br>UNITED STATES OF AMERICA, and ERIC HIMPTON HOLDER, JR., in his official capacity as Attorney General of the United States,<br><br>    *Defendants,*<br><br>    and<br><br>JAMES DUBOSE, *et al.,*<br><br>    *Defendant-Intervenors.* | Civil Action No.<br><br>1:12-CV-203-CKK-BMK-JDB<br>(Three Judge Court) |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
SOUTH CAROLINA'S MOTION TO EXCLUDE THE TRIAL TESTIMONY
OF DR. JOHN C. RUOFF**

On July 21, 2012, one day after the deadline set by the Court for disclosure of trial witnesses and the close of fact discovery, Intervenors revealed for the first time that they intend to call Dr. John Ruoff as a live "lay" witness to "testify to the severe lack of public transportation for voters in various counties of South Carolina to locations where they can obtain photo ID."[1] Intervenors first disclosed Dr. Ruoff as a person with potentially discoverable information just four days earlier.  *See* Defendant-Intervenors' Amended Rule 26(a)(1) Disclosures at 12, July 17,

---

[1] Fourth Revised Notice of Intent to Call Live Witnesses at Trial, July 21, 2012 (ECF No. 136). Intervenors contend that the witness list served on July 20, the last day of fact discovery, "inadvertently omitted Dr. John Ruoff."  *Id.*  So Intervenors apparently intended to disclose Dr. Ruoff as a trial witness not one day late but rather on the day that fact discovery closed and revised witness lists were due.

1

2012 (attached as Ex. 1).  They have since clarified that they intend to present Dr. Ruoff's direct "lay" testimony in written form.  Defendant's Witness List (Aug. 10, 2012) (attached as Ex. 2.)

It is beyond plain, however, that Intervenors are really seeking to offer Dr. Ruoff as an expert witness, not a fact or "lay" witness.  He works as an expert witness and consultant—and frequently does so for Intervenors or groups aligned politically with them in South Carolina Voting Rights Act litigation.  Indeed, he authored an October 2011 expert report on Act R54 entitled "The Retrogressive Effect of South Carolina's Photo Voter ID Law" on behalf of "[a] coalition of South Carolina organizations concerned about the racially disparate effects of" Act R54.  *See* Ex. 3.  That report was submitted to DOJ in connection with Act R54, but was not provided to South Carolina by Intervenors—and Dr. Ruoff clearly held himself out as an expert on the very subject matter Intervenors now say he will testify to as a "lay" witness.  Moreover, even were it proper for Dr. Ruoff to testify as a "lay" witness (and it is not), Intervenors failed to identify him in *any* capacity until July 17, a mere three days before fact discovery closed, and did not list him as a trial witness until July 21, the day after fact discovery closed.

Federal Rule of Civil Procedure 37(c) provides that a party who "fails to provide information or identify a witness as required by Rule 26(a) or (e) … is not allowed to use that information or witness to supply evidence."  That rule applies here.

## LEGAL STANDARD

Whether a witness is an expert or not, Federal Rule of Civil Procedure 26(a) requires a party who intends to use the witness's testimony to make certain disclosures to the other side regarding the witness.  And Rule 37 is clear about the consequences for failing to timely make those disclosures: The witness's testimony cannot be used.

For expert witnesses, the party calling the witness is required to disclose the expert's identity, as well as provide a written report prepared by the witness and various supporting data. Fed. R. Civ. P. 26(a)(2). For non-expert witnesses, a party must make initial disclosure of the witness's identity and contact information, and the subject matter of the witness's knowledge. *Id.* R. 26(a)(1). In this case, this Court ordered that initial disclosures be made on April 20,[2] and expert disclosures and reports be served by June 19.[3] Rebuttal expert disclosures and reports were due August 6.[4]

Rule 37(c)(1) provides that if a party fails to make any of the disclosures required by Rule 26(a), "the party is not allowed to use that information or witness to supply evidence." This "exclusion … is automatic and mandatory unless the party to be sanctioned can show that its violation was either justified or harmless." *United States ex rel. Purcell v. MWI Corp.*, 824 F. Supp. 2d 12, 19 (D.D.C. 2011) (citations omitted). "This automatic sanction provides a strong inducement for disclosure of material that the disclosing party would expect to use as evidence[.]" Fed. R. Civ. P. 37(c), Adv. Comm. Note.

## ARGUMENT

### I. DR. RUOFF'S TESTIMONY SHOULD BE EXCLUDED BECAUSE IT IS IMPROPER EXPERT TESTIMONY.

Notwithstanding Intervenors' attempt to characterize Dr. Ruoff as a "lay" witness, Intervenors are clearly seeking to use Dr. Ruoff as an expert on South Carolina's "transit systems" and their effect on minority voters. This is plain from Dr. Ruoff's previous engagement by a "coalition" of unnamed South Carolina voting-rights organizations to prepare a

---

[2] Minute Order, Apr. 16, 2012.

[3] Minute Order, June 12, 2012.

[4] Third Rev. Sched. & P. Order at 2, July 3, 2012 (ECF No. 121).

report on R54's allegedly retrogressive effect, from the circumstances of the case, and from Dr. Ruoff's own extensive participation as an expert witness in previous voting-rights litigation.

### A. Dr. Ruoff Prepared an Expert Report on Act R54 That Was Produced to DOJ but Not Provided to South Carolina by Intervenors.

Notably, Dr. Ruoff has *already* authored an expert report on Act R54—including some discussion of the very topics on which Intervenors now proffer him—that was disclosed to DOJ but has not been provided by Intervenors to South Carolina.

Dr. Ruoff is "the Principal" of The Ruoff Group, which describes itself as "provid[ing] both expert research and policy analysis for South Carolina organizations and tools for South Carolinians better to participate in the decisions which impact their lives." The Ruoff Group, *About The Ruoff Group*, http://theruoffgroup.com/about/ (attached as Ex. 4 as visited Aug. 15, 2012). In a report delivered by The Ruoff Group in October 2011, Dr. Ruoff "examine[d] the effects of … Act [R54] on the ability of minority voters to participate in the electoral process." Ex. 3 at 1. The report, entitled "The Retrogressive Effect of South Carolina's Photo Voter ID Law," was commissioned by "[a] coalition of South Carolina organizations concerned about the racially disparate effects of [Act R54]," who are not otherwise identified in the report. *Id.*

This report has not been supplied to South Carolina by the Intervenors. Instead, it was produced in discovery in this case by the United States, which had received it as part of a submission in opposition to preclearance from South Carolina Senator Gerald Malloy. Letter from Sen. Gerald Malloy to T. Christian Herren at 2 (Dec. 20, 2011) (attached as Ex. 5). Senator Malloy described Dr. Ruoff to DOJ as "an experienced demographer and expert in voting rights." *Id.* In the report, Dr. Ruoff described himself as "someone who has … studied elections in South Carolina for a quarter of a century." Ex. 3 at 1 & n.1.

More than three pages of the 16-page expert report are dedicated to the very topics on which Intervenors now propose to have Dr. Ruoff give "fact" testimony: the alleged inadequacy of South Carolina's public transportation systems and the difficulties this would create for racial minorities in obtaining photographic voter IDs.  *See id.* 9-12, 15-16.  Dr. Ruoff summarily opines as to the "focus" of most of rural South Carolina's transit systems—which he characterizes as serving commuters and the elderly—and baldly states that this makes them unsuited for transporting people to DMV offices.  *Id.* at 10-11.  He also expresses the view that this condition of the transit system, combined with certain racial, income and employment demographics, renders the photo-ID requirement a poll tax.  *Id.* at 11-12.  Finally, he opines that demographics regarding car ownership and age increase the burden even more.  *Id.* at 15-16.

Dr. Ruoff's purported ability to conduct this type of analysis—and the need for it to make transit-system information useful in this case—of course explains why Intervenors picked him to give this testimony.  Indeed, Intervenors now propose to have Dr. Ruoff present written testimony, *see* Ex. 2, which presumably will be an expanded and elaborated version of his already-prepared report.  This is wholly indistinguishable from expert testimony.

### B.  Intervenors Are Seeking to Have Dr. Ruoff Testify As an Expert.

Only expert witnesses may present testimony "based on scientific, technical, or other specialized knowledge."  Fed. R. Evid. 701(c), 702(a); *see LifeWise Master Funding v. Telebank*, 374 F.3d 917, 929 (10th Cir. 2004).  "[T]he distinction between lay and expert witness testimony is that lay testimony 'results from a process of reasoning familiar in everyday life,' while expert testimony 'results from a process of reasoning which can be mastered only by specialists in the field.'"  Fed. R. Evid. 701, Adv. Comm. Note (citation omitted); *see Armenian Assembly of Am., Inc. v. Cafesjian*, 746 F. Supp. 2d 55, 65 (D.D.C. 2010) (Kollar-Kotelly, J.).  "[L]ay witnesses

must base their testimony on their experiential 'perception,'" *United States v. Wilson*, 605 F.3d 985, 1025 (D.C. Cir. 2010), "not … on specialized knowledge," *United States v. Guerrero*, 665 F.3d 1305, 1309 (D.C. Cir. 2011) (citation omitted).

Here, it is clear that Intervenors are seeking to have Dr. Ruoff testify about South Carolina's transit systems and their relationship to minorities' ability to procure photo identification based on his specialized knowledge about these issues. It is hard to imagine how Dr. Ruoff could give any testimony in this case (except perhaps a direct narrative of personal perceptions) without drawing on his decades-long involvement with South Carolina voting issues. Indeed, that experience is almost surely why Intervenors chose Dr. Ruoff instead of someone else to testify about public transit.

It will not answer for Intervenors to claim that Dr. Ruoff would only present lay fact testimony about where South Carolina's transit lines are and when they run. If that were the case, they would have no need to retain a seasoned voting-rights expert witness like Dr. Ruoff. In other contexts, questions regarding public transit scheduling and routes are routinely treated as matters for expert testimony.[5] The same should be true here. Bare facts about the locations and schedules of South Carolina's transit lines will be useless to the Court in determining whether Act R54 has a retrogressive effect unless filtered through considerable expertise on a host of other topics, including the racial and income demographics of the affected areas, car ownership rates among the various subpopulations, and the typical commuting behaviors of these subpopulations and their relationships to the schedules and locations of both transit lines and

---

[5] *See Darensburg v. Metro. Transp. Comm'n*, 611 F. Supp. 2d 994, 999 (N.D. Cal. 2009) (extent and importance of transit routes in case involving minority access); *Utahns for Better Transp. v. U.S. DOT*, 305 F.3d 1152, 1169-70 (10th Cir. 2002); *Ferris v. Univ. of Tex. at Austin*, 558 F. Supp. 536, 544 (W.D. Tex. 1983) (effect on bus schedules of time required for wheelchair-bound students to board).

DMV offices. In short, in order to be relevant to this case, information regarding "transit systems" will have to be framed with great sensitivity to Dr. Ruoff's advertised areas of expertise of "demography … and Southern politics." *See* Ex. D. This is only highlighted by the fact that, when the aforementioned unidentified "coalition" of South Carolina organizations retained the Ruoff Group to write a report on Act R54, the report included a less-developed version of just that type of framing. *See supra* Pt. I.A.

### C. Dr. Ruoff's Long History as an Expert Witness

The Ruoff Group represents that Dr. Ruoff "has appeared numerous times as an expert in state and federal courts, testifying on statistics, demography, Southern history and Southern politics." Ex. 4. As long ago as 1996, a three-judge U.S. district court in South Carolina noted that Dr. Ruoff "has testified as a plaintiff's expert in a number of section 2 voting rights cases." *Smith v. Beasley*, 946 F. Supp. 1174, 1882 (D.S.C. 1996).[6] Indeed, the *Smith* court noted Dr. Ruoff's heavy involvement in South Carolina's redistricting process in the 1990s, *id.* at 1183-95, 1202-04, and that in that process he "reported on a regular basis to … members of the [South Carolina Legislative] Black Caucus, as well as to officials of the NAACP and the ACLU." *Id* at 1182.[7] And Dr. Ruoff's expert participation in voting cases has continued since *Smith*. Court opinions reveal that he has served as an expert in at least three more recent cases:

- In South Carolina's 2000-Census redistricting litigation, Dr. Ruoff "was retained by the Southern Poverty Law Center for the purpose of conducting an extensive analysis of racially polarized voting patterns in South Carolina during the last ten years." *Colleton Cnty. Council v. McConnell*, 201 F.Supp. 2d 618, 641 (D.S.C. 2002).

---

[6] *Cf. NAACP v. City of Columbia, S.C.*, 850 F. Supp. 404, 413 (D.S.C. 1993) (Dr. Ruoff proposed alternative to municipal election system in a Section 2 VRA challenge).

[7] The court found Dr. Ruoff's racial intent in helping draw district lines a significant factor contributing to the invalidity of the redistricting effort at issue. *E.g., id.* at 1182 & 1207-08.

7

- In a Section-2 suit regarding school board elections, Dr. Ruoff provided an extensive expert report and expert testimony on voting history and demographics. *Levy v. Lexington Cnty.*, 2009 WL 440338, *passim*, No. 03-3093 (D.S.C. Feb. 19, 2009). On appeal, the Fourth Circuit regarded his methodology for determining "which candidates were minority preferred" as "not acceptable." 589 F.3d 708, 718-19 (4th Cir. 2009).

- In a case involving Section-2, Section-5, and constitutional challenges to procedures used in a disputed South Carolina Senate primary election, Dr. Ruoff gave "expert testimony and an affidavit" regarding the effect of poverty on voting in a re-election and the history of racial preferences in elections. *Glover v. S.C. Dem. Party*, 2004 WL 3262756 at *6, *7, No. 04-cv-2171-25 (Sept. 3, 2004)

Dr. Ruoff also has authored *Voting Rights in South Carolina: 1982-2006*, 17 S.Cal. Rev. L. & Soc. Just. 643 (Spring 2008).

\*   \*   \*

The Federal Rules' Advisory Committee specifically warned against "the risk that the reliability requirement set forth [for expert evidence] in Rule 702 will be evaded through the simple expedient of proffering an expert in lay witness clothing." Fed. R. Evid. 701, Adv. Comm. Note; *see United States v. Garcia*, 413 F.3d 201, 215 (2d Cir. 2005). That is the only plausible description of what Intervenors are attempting to do here.

## II. AS THE NONDISCLOSURE IS NEITHER JUSTIFIED NOR HARMLESS, DR. RUOFF'S TESTIMONY MUST BE EXCLUDED.

Under these circumstances, the exclusion of proposed testimony "is automatic and mandatory unless the party to be sanctioned can show that its violation was either justified or

8

harmless." *Purcell*, 824 F. Supp. 2d at 19.[8]  Moreover, "[t]he burden is on the party facing sanctions to prove that its violation was either substantially justified or harmless." *Elion v. Jackson*, 544 F. Supp. 2d 1, 6 (D.D.C. 2008).  Intervenors can prove neither.

There can be no justification for Intervenors' failure to identify a witness they had known about and consulted with for so long, *see supra* p.7—particularly where they have now identified him but failed to provide an expert report.  Intervenors' belated and incorrect designation of Dr. Ruoff as a "lay" witness is no excuse:  "[A] belief that such testimony would be lay and not expert opinion (or no opinion at all) is not a justification; at best, it's just a misunderstanding of law." *Tribble v. Evangelides*, 670 F.3d 753, 760 (7th Cir. 2012).  Nor can it justify their long nondisclosure of Dr. Ruoff as *any* kind of witness.

Likewise, the nondisclosure is far from harmless.  "The harm from the failure to disclose a witness flows from the unfair surprise hindering the prejudiced party's ability to examine and contest that witness' evidence." *Elion*, 544 F. Supp. 2d at 6.  "A party that fails to provide these disclosures" also "unnecessarily prolongs litigation[] and undermines the district court's management of the case." *Saudi v. Northrop Grumman Corp.*, 427 F.3d 271, 278 (4th Cir. 2005).  That is particularly true here, where the Court has ordered that trial testimony be presented on a paper record instead of live whenever possible, and Intervenors propose to submit Dr. Ruoff's testimony on paper, but so far have not produced any paper record of it at all.  Their eleventh-hour disclosure of Dr. Ruoff as a *lay* witness certainly cannot prevent prejudice. *See Musser v. Gentiva Health Servs.*, 356 F.3d 751, 755-58 (7th Cir. 2004).[9]  The unfair surprise is aggravated

---

[8] Quoting *Foster v. United States*, 130 F. Supp. 2d 68, 70 n.1 (D.D.C. 2001); *NutraSweet Co. v. X-L Eng'g Co.*, 227 F.3d 776, 785-86 (7th Cir. 2000) (quotation marks and alterations omitted)).

[9] *See also Samaan v. St. Joseph Hosp.*, 670 F.3d 21, 35-37 (1st Cir. 2012) (converting witness from lay to expert after close of discovery would have worked "extreme prejudice").

9

by Dr. Ruoff's history of far-from-impartial involvement in South Carolina's electoral system, and his apparent lack of qualifications as an expert on transit systems.

Likewise, even if Dr. Ruoff implausibly could be accurately designated a lay witness, identifying him so late in the pretrial process plainly remains unfairly prejudicial. Courts regularly exclude lay testimony under these circumstances. *E.g.*, *Foster v. United States*, 130 F. Supp. 2d 68, 70 n.1 (D.D.C. 2001) (excluding witnesses disclosed after discovery closed).[10]

## CONCLUSION

For the foregoing reasons, the Court should order that Dr. Ruoff not be permitted to testify in this case, either live or through the submission of paper records.

Respectfully submitted,

/s/ H. Christopher Bartolomucci
Paul D. Clement (DC Bar No. 433215)
H. Christopher Bartolomucci (DC Bar No. 453423)
Stephen V. Potenza (admitted *pro hac vice*)
Brian J. Field (DC Bar No. 985577)
Michael H. McGinley (DC Bar No. 1006943)
BANCROFT PLLC
1919 M Street, N.W., Suite 470
Washington, D.C. 20036
(202) 234-0090

Dated: August 15, 2012         *Counsel for the State of South Carolina*

---

[10] *See also, e.g., Ghawanmeh v. Islamic Saudi Acad.*, 274 F.R.D. 329, 331-32 (D.D.C. 2011) (excluding undisclosed witnesses); *Fu v. Owens*, 622 F.3d 880, 882, 883-84 (8th Cir. 2010) (identification of witness and disclosure of affidavit "after the close of discovery" did not cure nondisclosure); *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 330 (4th Cir. 2011) ("belatedly notif[ying]" opposing party of witness "after the close of discovery" would not stave off exclusion); *Grajales-Romero v. Am. Airlines, Inc.*, 194 F.3d 288, 297 (1st Cir. 1999) (affirming exclusion of witnesses identified for the first time in proposed pretrial order); *Romero v. Drummond Co.*, 552 F.3d 1303, 1321-22 (11th Cir. 2008).

## CERTIFICATE OF SERVICE

I hereby certify that on August 15, 2012, I filed the foregoing Memorandum with the Court's electronic filing system, which will provide notice to all counsel of record.

/s/ H. Christopher Bartolomucci

H. Christopher Bartolomucci
(D.C. Bar No. 453423)