IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| STATE OF SOUTH CAROLINA,<br><br>       *Plaintiff*,<br><br>v.<br><br>UNITED STATES OF AMERICA and<br>ERIC H. HOLDER, JR.,<br>in his official capacity as Attorney General,<br><br>       *Defendants*,<br><br>  and,<br><br>JAMES DUBOSE, JUNIOR GLOVER,<br>FAMILY UNIT, INC., BRENDA C.<br>WILLIAMS, M.D., AMANDA WOLF,<br>DELORES FREELON, NAOMI GORDON,<br>JOSEPH RILEY, RAYMOND<br>RUTHERFORD, and THE SOUTH<br>CAROLINA PROGRESSIVE NETWORK,<br><br>       *Defendant-*<br>       *Intervenors*,<br><br>  and,<br><br>LEAGUE OF WOMEN VOTERS OF SOUTH<br>CAROLINA and CRAIG DEBOSE,<br><br>       *Defendant-*<br>       *Intervenors*,<br><br>  and,<br><br>SOUTH CAROLINA STATE CONFERENCE<br>OF THE NAACP, and KENYDA BAILEY,<br><br>       *Defendant-*<br>       *Intervenors*. | Case No. 1:12-cv-203 (CKK, BMK, JDB) |

**DEFENDANT-INTERVENORS' OPPOSITION TO SOUTH CAROLINA'S
MOTION IN LIMINE TO EXCLUDE THE TESTIMONY OF THEODORE
<u>ARRINGTON AND ORVILLE BURTON</u>**

The Defendant-Intervenors ("Intervenors") hereby respond to South Carolina's (the "State") Motion to Exclude the Testimony of Theodore Arrington and Orville Burton (ECF No. 165) ("Motion" or "Mot.").[1]

The State has regrettably burdened the Court with a motion indistinguishable from one rejected in this same Court just one month ago. Exactly as the State has done here, the plaintiff in *State of Texas* v. *Holder*—the preclearance suit over Texas's photo ID law—filed a motion *in limine* to exclude the testimony of expert witnesses for the defendants and defendant-intervenors on legislative intent. *Texas* v. *Holder*, No. 12-128 (ECF Nos. 194, 201) (June 20, 2012). Exactly as the State has done here, Texas argued that the experts could not opine on "state of mind" and that the experts used unreliable methodology in order to "regurgitate hearsay statements." *Texas* v. *Holder* (ECF No. 201, at 3, 7, 10.) Texas's motions were denied by the three-judge panel: "[Defendant-Intervenors' expert] does not, as Texas argues, attempt to opine on the individual intentions of legislators." *Texas* v. *Holder* (Minute Order 7/3/12). Yet South Carolina has decided to attempt the same meritless motion , relying on authority far afield from the Section 5 context, selectively citing one Section 5 case—and making no mention of *Texas* v. *Holder*.

The State's motion fundamentally misunderstands the role of experts in general, and expert historians in a Section 5 case, in particular. Pursuant to the Supreme Court's mandate in *Village of Arlington Heights* v. *Metropolitan Housing Corp.*, 429 U.S. 252 (1977), that courts should review the historical background, legislative history and procedural sequence of the law at issue, Dr. Burton evaluated the facts relevant to these categories as a historian steeped in the

---

[1] Defendant-Intervenors submit this Opposition solely in relation to their expert Dr. Burton, but likewise oppose the exclusion of Dr. Arrington's testimony on the grounds set forth in the United States' opposition to this same Motion.

history of the State, its legislative process, and its lawmakers' relationship with minorities.  What weight the Court may give to his opinion will depend on how persuasive the Court finds it, but it easily passes the threshold of admissibility.  Not all experts are scientists with methodologies as precise as the State may desire, but Dr. Burton's analysis falls well within the standard and accepted methodologies of an expert historian.

The State levies four arguments against Dr. Burton:  (1) that Dr. Burton impermissibly opines on legislators' states of mind; (2) that Dr. Burton testifies as to ultimate legal issues; (3) that Dr. Burton simply summarizes the record and acts as a "conduit[] for otherwise-inadmissible hearsay"; and (4) that Dr. Burton does not use a reliable methodology to opine on purpose. (Mot. at 2-3.)  Each of these arguments fails under well-settled law.

## I.  Dr. Burton Will Testify to the Reasons Behind Act R54, Not Individual Legislators' State of Mind.

The State conflates the "purpose" prong of a Section 5 analysis with the "state of mind" of individual legislators.  (*See* Mot. at 5 ("Prof. Burton's conclusions about various individuals' intent and motivation are equally impermissible.").)  Importantly, the State draws its primary authority not from Section 5 jurisprudence, but from a line of securities fraud and product liability cases on *scienter*, to argue (as the State of Texas did), that "inferences about the intent or motive of parties or others lie outside the bounds of expert testimony."  (Mot. at 3 (quoting *In re Rezulin Products Liability Litig.*, 309 F. Sup. 2d 531, 547 (S.D.N.Y. 2004).)  The State then quotes a ruling in a Section 5 redistricting case that "the government's expert 'will not be allowed to opine on the actual intent of the state's legislature.'"  (Mot. at 3-4 (quoting *Texas* v. *United States*, No. 11-1303 ("*Texas Redistricting Action*"), Trial Transcript at 7 (Jan. 17, 2012) ("Trial Tr.")).  But the State fails to acknowledge that the ruling went on to distinguish between "actual intent" (*i.e.*, "state of mind"), and legislative purpose ("that is, the reasoning behind [the

2

law]"). (*Texas Redistricting Action*, Trial Tr. at 7-8.) As the unanimous decision of the three judges explained, the salient issue in a Section 5 case, to which a purpose expert <u>may</u> testify, is the reasoning and motivations behind the challenged law:

> These experts may testify to what they infer or deduce were the reasons behind Texas redistricting from the application of their expertise to a set of facts, actions and consequences. Such testimony will reflect their own opinions as to purpose[,] not the "actual" intention of someone else.

(*Id.* at 8.) The court then accepted the purpose experts' testimony as "specialized knowledge to help the trier of fact understand complex evidence." (*Id.*) Thus, the State not only selectively quoted from the Court's decision; it ignored the actual holding.

Here, Dr. Burton has applied his expertise as a historian of South Carolina politics to "deduce . . . the reasons behind" Act R54. (*See id.*) While his report, at points, uses shorthand to describe the statements and actions of legislators and the inferences he draws from these about the legislative body (*see* Mot. at 5), his expert opinion is that "the goal of hindering African American voting played a substantial role in the introduction" of Act R54. (Burton Rep. at 2.) Where, as here, the fact-finder is not a jury but a three-judge panel, there is little risk that such nuance will be lost or prove confusing. *Texas Redistricting Action* (Trial Tr. at 6-7). Indeed, the panel in *Texas* v. *Holder* readily understood that the intervenors' purpose expert "does not . . . attempt to opine on the individual intentions of legislators," and thus denied the plaintiff's identical motion *in limine*. (Minute Order 7/3/12.)

## II.   Dr. Burton May Properly Express an Opinion on an Ultimate Issue.

The State's second argument, that Dr. Burton improperly testified to the ultimate legal issue of discriminatory purpose, stands on even weaker ground. (*See* Mot. at 2.) Courts have repeatedly held an expert may opine on an ultimate issue as long as the opinion is useful to the fact-finder. *Kapche* v. *Holder*, 677 F.3d 454, 464 (D.C. Cir. 2012) (accepting expert opinion

3

"as to facts that, if found, would support a conclusion that the legal standard at issue was satisfied") (quoting *Burkhart* v. *Washington Metro. Area Transit Auth.*, 112 F.3d 1207, 1212-13 (D.C. Cir. 1997); *United States* v. *Dazey*, 403 F.3d 1147, 1172 (10th Cir. 2005) ("Even if [the expert's] testimony . . . embraced the ultimate issue, such testimony is permissible as long as the expert's testimony assists, rather than supplants, the jury's judgment."); Fed. R. Evid. 704(a).

Here, Dr. Burton opined that Act R54 was motivated substantially by the "goal of hindering African American voting," a fact which, "if found, would support a conclusion" that the Act has a discriminatory purpose. (Burton Rep. at 2.) *See also Kapche*, 677 F.3d at 464. Dr. Burton goes on to list several factual inferences he drew from the materials he reviewed, which, likewise, if accepted, would compel a finding of discriminatory intent under *Arlington Heights*, 429 U.S. at 265-268. (Burton Rep. at 2.) But the fact that Dr. Burton reviewed the categories of evidence that *Arlington Heights* prescribed does not turn his analysis into an application of law to facts.[2] (*See* Mot. at 6.) *Lewis* v. *N.M. Dep't of Health*, 275 F. Supp. 2d 1319, 1331 (D.N.M. 2003) ("[A] witness may refer to the law in expressing an opinion without that reference rendering the testimony inadmissible.") (quoting *United States* v. *Oles*, 994 F.2d 1519, 1523 (10th Cir. 1993)).

### III. Dr. Burton Applied His Expertise as a Historian to the Record, and Does Not Merely Summarize Evidence.

The State acknowledges, as it must, that "experts may rely on hearsay in forming opinions." (Mot. at 9.) *See* Fed. R. Evid. 703 (experts may rely on otherwise inadmissible data

---

[2] The State's objection to Dr. Burton's review of legislative history is perplexing. (*See* Mot. at 7.) While it is true that courts regularly consult legislative history, they usually do so in order to understand the meaning of statutes, not to evaluate any improper purpose behind legislation. In the Section 5 context, the *Texas Redistricting Action* panel found that the experts' review of "mountains of data," including the "legislative record," was useful to the Court. (Trial Tr. at 7, 8.)

of the sort that other experts would consult in forming opinions).  Yet the State still attacks Dr. Burton for relying on hearsay by claiming he merely "summarize[d] and regurgitate[d]" record material.  (Mot. at 8.)  This claim selectively ignores the expert analysis Dr. Burton applies to such material.  For example, the State chides Dr. Burton for summarizing racially charged, out-of-court statements by Act R54 proponents (Mot. at 9 (citing Burton Rep. at 15-18)), but fails to address the section following it, "Conclusion."  There, Dr. Burton evaluates the statements (and legislation touching on minorities and voting) as "show[ing] a pattern among South Carolina lawmakers of stigmatizing the 'other,' including and particularly African-Americans."  (Burton Rep. at 21-22.)  The State's other attacks on "large swaths of his report" collecting data similarly ignore his synthesis and analysis of such data.  (*Compare* Mot. at 8 (Dr. Burton "summariz[ed] federal court cases") *with* Burton Rep. at 7 (analyzing the State's selective non-compliance with the National Voter Registration Act in agencies serving minority populations as evidence of recent state-sponsored discrimination).)

    The State's motion ignores two equally clear truths:  that historians necessarily spend "large swaths" of text synthesizing disparate sources and data, and that judges deciding voting rights cases have long depended on expert historians to do just this.  *See Hunter* v. *Underwood*, 471 U.S. 222, 229 (1985) ("The evidence of legislative intent . . . consisted of the proceedings of the convention, several historical studies, and the testimony of two expert historians."); *Dillard* v. *Crenshaw Cty.*, 640 F. Supp. 1347, 1356 (M.D. Ala. 1986) (relying on "testimony and opinions of a well-respected historian" to find the Alabama legislature fashioned at-large electoral systems "to meet the growing threat of black voters").  Indeed, the *Texas Redistricting Action* panel rejected the plaintiff's identical attack—that the purpose experts "merely summarize easy to understand documents such as emails [and the] Texas legislative

5

record"—as "reflect[ing] a stingy reading of . . . the testimony these experts intend to offer." (Trial Tr. at 6, 7.)  The Court admitted these experts' examination of "mountains of data," as "their testimony will offer specialized knowledge to help the trier of fact understand complex evidence." (Trial Tr. At 7, 8 .)

## IV.     Dr. Burton Employed Reliable Methods Accepted by Historians and Social Scientists.

Finally, in attacking Dr. Burton's methodology as a historian, South Carolina ignores the "flexible" inquiry that *Daubert* and its progeny apply to nonscientific expert testimony.  *Daubert* v. *Dow Pharmaceuticals* 509 U.S. 579, 594 (1993); *see Kumho Tire Co.* v. *Carmichael*, 526 U.S. 137, 152 ("[A] trial court should consider the specific factors identified in *Daubert* where they are reasonable measures of the reliability of expert testimony.").  Because the social sciences, such as history, "cannot have the exactness of hard science methodologies, trial judges are given broad discretion" in determining which *Daubert* factors should be applied to particular expertise.  *United States* v. *Simmons*, 470 F.3d 1115, 1122-1123 (5th Cir. 2006) (quoting *Jenson* v. *Eveleth Taconite Co.*, 130 F.3d 1287, 1297 (8th Cir. 1997)) (accepting social science expert despite lack of "empirical validity and ascertainability of error rate").

In *United States* v. *Paracha*, the court admitted over a *Daubert* challenge the testimony of an expert historian, noting that "[w]here, as here, the proposed expert testimony is not of a technical nature, but rather falls within the ambit of social science, this Court is guided by the objective of the *Daubert* factors, and not a mechanical application of each one."  No. 03-1197, 2006 WL 12768, at *19 (S.D.N.Y. Jan. 3, 2006).  The court rejected defendant's argument challenging the historian's methodology "as a mere culling from a handful of cases and internet reports information that the user deems reliable," *id.* at *20, stating:

> Although Kohlmann's methodology is not readily subject to testing and permits of no ready calculation of a concrete error rate, it is

6

> more reliable than a simple cherry-picking of information from websites and other sources. . . . [His] opinions and conclusions are subjected to various forms of peer review and . . . the opinions he proposes to offer here . . . are generally accepted within the relevant community.

*Id.*

Here, the State similarly complains that Dr. Burton's findings are "impossible for anyone else to test or replicate" and argues that Dr. Burton "merely summarize[s] a hodgepodge of materials . . . and opine[s] that this all adds up to a prohibited purpose." (Mot. at 10.) But this is a parsimonious account of a historian's work. The extensive list of peer-reviewed articles in Dr. Burton's CV, as well as his book on South Carolina history nominated for the Pulitzer Prize, attest to Dr. Burton's reliability as a historian of Southern politics and race relations. (Burton Rep., App'x A, at 1-2, 3-4.) Similarly, the honors, research grants and editorial positions Dr. Burton has received for his work on Southern history and African-American studies indicate his historical methods are "generally accepted within the relevant community." *See Paracha*, 2006 WL 12768, at *20. (Burton Rep., App'x A, at 11-16.) Contrary to the State's claims, Dr. Burton explains in detail why he "rejected alternate hypotheses": for example, in discussing the pretextual nature of the State's claimed purpose of combating voter fraud. (Mot. at 10; Burton Rep. at 44-46.)

The State's misapplication of *Daubert* mirrors that of the State of Texas in *Texas* v. *Holder*, which argued the expert historian on purpose "fail[ed] to identify any discernable methodology on which his opinions are based." *Texas* v. *Holder* (ECF No. 194-1, at 5.) The three-judge panel in that case rejected the plaintiff's motion to exclude the purpose expert's testimony, and this Court should do the same here.

7

Dated: August 20, 2012

Respectfully submitted,

/s/ Garrard R. Beeney

| | |
|---|---|
| Arthur B. Spitzer (DC Bar No. 235960) | Jon M. Greenbaum (D.C. Bar No. 489887) |
| AMERICAN CIVIL LIBERTIES UNION OF THE NATION'S CAPITAL | Mark A. Posner (D.C. Bar No. 457833) |
| | Robert A. Kengle |
| 4301 Connecticut Avenue, NW, Suite 434 | LAWYERS' COMMITTEE FOR |
| Washington, DC 20008 | CIVIL RIGHTS UNDER LAW |
| (202) 457-0800 | 1401 New York Ave. NW |
| (202) 457-0805 (fax) | Ste. 400 |
| artspitzer@gmail.com | Washington, DC 20005 |
| | Tel: (202) 662-8389 |
| Laughlin McDonald | Fax: (202) 628-2858 |
| Nancy Abudu | mposner@lawyerscommittee.org |
| Katie O'Connor | |
| AMERICAN CIVIL LIBERTIES UNION FOUNDATION, INC. | Michael A. Cooper *(pro hac vice)* |
| | Garrard R. Beeney *(pro hac vice)* |
| 230 Peachtree Street, N.W., Suite 1440 | Peter A. Steciuk *(pro hac vice)* |
| Atlanta, GA 30303-1227 | Taly Dvorkis *(pro hac vice)* |
| (404) 523-2721 | Theodore A.B. McCombs *(pro hac vice)* |
| (404) 653-0331 (fax) | Sean A. Camoni *(pro hac vice)* |
| koconnor@aclu.org | SULLIVAN & CROMWELL LLP |
| | 125 Broad Street |
| Susan Dunn | New York, NY 10004-2498 |
| AMERICAN CIVIL LIBERTIES UNION OF SOUTH CAROLINA | Tel: (212) 558-4000 |
| | Fax: (212) 291-9007 |
| P.O. Box 20998 | beeneyg@sullcrom.com |
| Charleston, SC 29413 | |
| sdunn@aclusouthcarolina.org | Wendy R. Weiser *(pro hac vice)* |
| | Keesha M. Gaskins *(pro hac vice)* |
| *Attorneys for Defendant-Intervenors James Dubose, et al.* | Mimi Marziani *(pro hac vice)* |
| | Elisabeth Genn *(pro hac vice)* |
| | THE BRENNAN CENTER FOR JUSTICE |
| Debo P. Adegbile (D.C. Bar No. NY0143) | AT NYU SCHOOL OF LAW |
| Elise C. Boddie | 161 Avenue of the Americas, Floor 12 |
| Ryan P. Haygood | New York, NY 10013-1205 |
| Dale E. Ho (D.C. Bar No. NY0142) | Tel: (646) 292-8310 |
| Natasha M. Korgaonkar | Fax: (212) 463-7308 |
| Leah C. Aden | keesha.gaskins@nyu.edu |
| NAACP LEGAL DEFENSE & EDUCATIONAL FUND, INC. | Armand Derfner (D.C. Bar No. 177204) |
| 99 Hudson Street, Suite 1600 | DERFNER, ALTMAN & WILBORN |
| New York, NY 10013 | 575 King Street, Suite B |
| (212) 965-2200 | P.O. Box 600 |

8

rhaygood@naacpldf.org
laden@naacpldf.org

Douglas H. Flaum
Michael B. de Leeuw
Adam M. Harris
FRIED, FRANK, HARRIS,
SHRIVER & JACOBSON LLP
One New York Plaza
New York, NY 10004-1980
(212) 859-8000

Victor L. Goode
NATIONAL ASSOCIATION FOR THE
ADVANCEMENT OF
COLORED PEOPLE
4805 Mt. Hope Dr.
Baltimore, MD 21215

*Counsel for Defendant-Intervenors South Carolina State Conference of the NAACP,* et al.

Charleston, SC 29402
Tel:  (843) 723-9804
Fax:  (843) 723-7446
aderfner@dawlegal.com

*Counsel for Defendant-Intervenors the League of Women Voters of South Carolina,* et al.

9

### CERTIFICATION PURSUANT TO THE COURT'S APRIL 4, 2012 ORDER

Pursuant to the Court's Minute Order of April 4, 2012, the Defendant-Intervenors have consolidated their request for relief into a single motion.  Further consolidation with the United States is inappropriate in this instance because Plaintiff has challenged Defendant-Intervenors' expert witness as well as the United States' expert witness.

Dated: August 20, 2012

                                                Respectfully submitted,

                                                /s/ Garrard R. Beeney_____
                                                Garrard R. Beeney
                                                SULLIVAN & CROMWELL LLP
                                                125 Broad Street
                                                New York, New York 10004-2498
                                                Tel: (212) 558-4000
                                                Fax: (212) 291-9007
                                                beeneyg@sullcrom.com

## CERTIFICATE OF SERVICE

I certify that on August 20, 2012, I filed the foregoing Statement with the Court's electronic filing system, which will provide notice to all counsel of record.

/s/ Theodore A.B. McCombs
Theodore A.B. McCombs