IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| STATE OF SOUTH CAROLINA,<br><br>       *Plaintiff,*<br><br>  v.<br><br>UNITED STATES OF AMERICA, and ERIC HIMPTON HOLDER, JR., in his official capacity as Attorney General of the United States,<br><br>       *Defendants,*<br><br>  and,<br><br>JAMES DUBOSE, JUNIOR GLOVER, FAMILY UNIT, INC. BRENDA C. WILLIAMS, M.D., AMANDA WOLF, DELORES FREELON, NAOMI GORDON, JOSEPH RILEY, RAYMOND RUTHERFORD, and THE SOUTH CAROLINA PROGRESSIVE NETWORK,<br><br>       *Defendant-Intervenors,*<br><br>  and,<br><br>LEAGUE OF WOMEN VOTERS OF SOUTH CAROLINA and CRAIG DEBOSE,<br><br>       *Defendant-Intervenors,*<br><br>  and,<br><br>SOUTH CAROLINA STATE CONFERENCE OF THE NAACP and KENYDA BAILEY,<br><br>       *Defendant-Intervenors.* | Case No. 1:12-cv-203 (CKK, BMK, JDB) |

**DIRECT TESTIMONY OF DR. ORVILLE VERNON BURTON**

My name is Orville Vernon Burton, and I have been retained by the Defendant-Intervenors as an expert witness in the above-caption litigation, *South Carolina v. United States*. My direct testimony is largely set forth in my expert reports dated June 19, 2012 and July 26, 2012, which I incorporate herein by reference. A detailed record of my professional qualifications is set forth in my curriculum vitae, which was attached as Appendix A to my June 19, 2012 report.

The purpose of this additional written direct testimony is to set forth my primary conclusion, provide an overview of the bases for that conclusion, and to offer some clarifications to my expert opinion.

In my June 19, 2012 and June 26, 2012 expert reports, I offer the primary conclusion that Act R54 (or "the Voter ID Law") was passed by the South Carolina legislature with a racially discriminatory intent. As detailed in my June 19, 2012 report, I arrived at this conclusion after examining a wide range of sources, including publicly available materials and the record in this case. My conclusion is based primarily on the following subsidiary findings:

- key decision-makers demonstrate a propensity for racially-charged remarks and embrace racially insensitive culture;

- the legislative histories of the Voter ID Law and its predecessor were characterized by procedural irregularities that suggest the presence of a discriminatory purpose;

- the Legislature rejected proposed amendments that would not have undermined the stated purpose of the Voter ID Law but would have ameliorated the Law's disparate burden;

- the Voter ID Law was treated with the utmost urgency in the face of severe opposition, even though there is no evidence of any problem the Law would address;

- key decision-makers were made aware of the disparate impact the Voter ID Law would have on African American voters through their own research in the redistricting context, the General Assembly committee hearing process, and public discourse; these key decision-makers, however, made no effort to address this problem but instead showed consistent disregard for minority viewpoints;

- the strict limitations on what photo IDs are accepted under the Voter ID Law are not necessary to ensure a voter is who he says he is, raising serious questions about the Legislature's decision to reject the use of State employee IDs and student IDs;

- no bill sponsors, election administrators or members of the testifying public could identify any verified instances of voter fraud that would be addressed by the Voter ID Law, strongly suggesting that the stated reason for the Law is a pretext;

- South Carolina has a long history of efforts to hinder African American voting, including very recent examples of state-sponsored discrimination;

- a sustained history of racial bloc voting by African Americans and their overwhelming support for Democrats has led to a perception on the part of the Republican party that African American turnout is an electoral threat;

- adamant and unprecedented efforts to pass voter ID legislation followed on the heels of President Obama's election and record African American turnout in South Carolina in 2008; and

- the 2011 South Carolina Legislature considered and passed a number of other measures that targeted minority populations.

In addition to the contents of the reports, I testify to the following:

1. In forming my expert opinion in this case, I began with the null hypothesis that Act R54 was not enacted with a racially discriminatory purpose.

2. In offering the opinion that Act R54 was enacted with a racially discriminatory purpose, I am not opining as to the state of mind of any individual legislator. Instead, the subject of my inquiry and my expert opinion is the purpose behind the law.

3. My expert opinion does not rest on the reasons why racial bloc voting persists in South Carolina, but rather on the implications of this fact: that race and party remain inseparable in South Carolina politics and that, as a result, the Republican majority in the South Carolina legislature that pushed for a photo ID law and ultimately passed Act R54, understood that any effort to suppress the vote among low-income African Americans would serve to its partisan advantage. As a corollary, given the continuing prevalence of racial bloc voting in South Carolina, the Republican majority understood that any effort to suppress the vote among low-income Democrats would necessarily strike at African American voters.

4. The recent history of discrimination in South Carolina and the events surrounding the passage of Act R54 play the most significant role in my ultimate conclusion that the General Assembly passed the Act with a discriminatory purpose. Nevertheless, the long and well-documented history of state-sponsored discrimination against African Americans remains an important factor supporting that conclusion.

5. In forming my expert opinion, I considered, and ultimately rejected, each of the two justifications that proponents offered for Act R54—combating voter fraud and enhancing public confidence in the State's electoral system. I conclude that both of these proffered justifications are pretextual.

I declare under penalty of perjury that the report is true and correct, to the best of my knowledge.

Executed on this 21st day of August, 2012

*[signature]*

Orville Vernon Burton

5