IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| STATE OF SOUTH CAROLINA,<br><br>    Plaintiff,<br><br>    v.<br><br>UNITED STATES OF AMERICA, and ERIC HIMPTON HOLDER, JR., in his official capacity as Attorney General of the United States,<br><br>    Defendants,<br><br>JAMES DUBOSE, *et al.*,<br><br>    Defendant-Intervenors. | Civil Action No.  1:12-CV-203<br>(CKK-BMK-JDB)<br>Three Judge Court |

## MEMORANDUM IN SUPPORT OF THE UNITED STATES' MOTION
## TO EXCLUDE THE TESTIMONY AND REPORT OF DR. SCOTT BUCHANAN

South Carolina asks this Court to reply upon the declaration and trial testimony of Dr. Scott Buchanan, its purported rebuttal expert on the issue of legislative purpose.  Yet, Dr. Buchanan has no expertise in that area.  Accordingly, Dr. Buchanan has offered no opinion on the core issue before this Court: the legislative purpose behind Act R54.  Instead, Dr. Buchanan has presented opinions on the opinions of Drs. Theodore Arrington and Orville Vernon Burton concerning Act R54's enactment.  The core of Dr. Buchanan's opinion is that Drs. Arrington and Burton failed to consider certain information that Dr. Buchanan views as probative.  *See* Aug. 31, 2012 Trial Tr. at 228:12-19 (Ex. 1) [hereinafter "Trial Tr."].  The fatal flaw in this testimony is that Dr. Buchanan admittedly lacks any expertise to determine the information relevant to a purpose inquiry.  Moreover, Dr. Buchanan presented several opinions without bases in fact or social science methodology.  As a result, Dr. Buchanan's testimony and his August 6, 2012

report should be excluded under Rule 702, Fed. R. Evid., as speculative, unreliable, and unable to assist this Court as trier of fact. For the reasons that follow, the United States respectfully requests that this Court grant this motion to exclude expert testimony.[1]

## I.     BACKGROUND

On May 30, 2012, the State of South Carolina retained Dr. Buchanan to serve as an expert witness solely for the purpose of rebutting the anticipated expert testimony of Drs. Arrington and Burton. *See* Buchanan Dep., Aug. 16, 2012, at 33:6-21 (Ex. 2); Buchanan Decl. at 1 (Ex. 3). On August 6, Dr. Buchanan offered a lengthy report, which may be summarized into three central points:

(1) South Carolina has made progress concerning minority voting rights since the enactment of the Voting Rights Act in 1965, to the extent that past discrimination has no current effect.

(2) Dr. Arrington and Dr. Burton used unreliable methodologies.

(3) Dr. Arrington and Dr. Burton failed to consider how photographic voter identification laws may deter voter fraud.

Buchanan Decl. at 3. Dr. Buchanan presents statistics to support his first conclusion, including voter registration and turnout rates and the racial distributions of elected officials, as well as a brief discussion of Voting Rights Act enforcement in South Carolina. *See id.* at 4-16, 19-22. To support his second conclusion, Dr. Buchanan principally presents previous academic studies concerning changing political attitudes and party affiliations in the South. *See id.* at 16-19. To support his third conclusion, Dr. Buchanan relied on an election reform study concerning the

---

[1] This motion is timely pursuant to the Court's decision to hear Dr. Buchanan's testimony while permitting the United States to file a written motion to exclude that testimony after the conclusion of trial. *See* Trial Tr. at 196:21-197:5.

nation as a whole, an election integrity study specific to the City of Philadelphia, and reports of voter fraud allegations collected by an internet blog. *See id.* at 19-29.

At trial, Dr. Buchanan offered brief direct testimony that followed the central claims of his report. *See* Trial Tr. at 188:5-193:6, 197:19-198:20. During voir dire and cross-examination, however, Dr. Buchanan conceded he is not an expert in determining legislative purpose or in analyzing voter fraud; he admitted too that he lacked familiarity with the legal standards applicable under the Voting Rights Act and those set out in *Village of Arlington Heights v. Metropolitan Housing Development Corporation*, 429 U.S. 252 (1977). *See* Aug. 31, 2012 Trial Tr. at 194:7-195:1, 215:2-20, 216:17-217:2. Dr. Buchanan also conceded that he had not read Act R54, the Act's legislative history, depositions taken in this case, or any other discovery materials exchanged between the parties. *See id.* at 195:2-195:8, 222:18-223:7. Dr. Buchanan acknowledged that his report contained "straw man" arguments, presented data without statistical testing or controls, and offered personal opinions unsupported by data. *Id.* at 203:5-204:5, 205:15-211:6, 211:25-212:24.

**II.     RULE 702 BARS DR. BUCHANAN FROM OFFERING EXPERT TESTIMONY CONCERNING THE INTENT OF ACT R54.**

Rule 702 of the Federal Rules of Evidence

> governs testimony from expert witnesses—those who testify based on scientific, technical, or specialized knowledge in a field of expertise. The party wishing to use an expert witness must first establish the witness's "knowledge, skill, experience, training, or education. The witness may offer expert testimony only if the trial judge finds that the witness's qualifications and methods make his opinions "reliable."

*United States v. Smith*, 640 F.3d 358, 365 (D.C. Cir. 2011) (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993)). The requirement to establish an expert's qualifications applies with equal force to a witness offered in a rebuttal case. *See, e.g.*, *Haimdas v. Haimdas*,

401 Fed. App'x 567, 568 (2d Cir. 2010) (summary order).  Three aspects of Rule 702 are at issue here.  First, "the expert's scientific, technical, or other specialized knowledge" must "help the trier of fact to understand the evidence or to determine a fact at issue."  Fed. R. Evid. 702(a).  Second, "the testimony" must be "based on sufficient facts or data."  *Id*. 702(b).  Third, "the testimony" must be "the product of reliable principles and methods."  *Id*. 702(c).

"Rule 702's 'helpfulness' standard requires a valid scientific connection to the pertinent inquiry as a precondition to admissibility."  *United States v. Pollard*, 128 F. Supp. 2d 1104, 1119 (E.D. Tenn. 2001); *see also United States v. Posado*, 57 F.3d 428, 433 (5th Cir. 1995).  This rule "requires a valid . . . connection to the pertinent inquiry as a precondition to admissibility."  *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999) (quoting *Daubert*, 509 U.S. at 592).  Thus, where an expert is unaware of the prevailing standards in the relevant field of inquiry, his or her testimony may be excluded.  *See, e.g.*, *Rembrandt Vision Techs., L.P. v. Johnson & Johnson Vision Care, Inc.*, ___ F.R.D. ___, 2012 WL 1988715, at *11 & n.13 (M.D. Fla. June 4, 2012) (finding that inability to justify departure from standards "cuts against the reliability" of the analysis).

Federal Rule of Evidence 702(b) sets the basic requirement that an expert's opinions be based in a review of the relevant underlying facts.  Experts may not extrapolate trends from a single data-point or fail to consider data ordinarily at the center of the relevant inquiry.  *See Wasson v. Peabody Coal Co.*, 542 F.3d 1172, 1175-76 (7th Cir. 2008).  Simply put, "experts' opinions are worthless without data and reasons."  *United States v. Marsh*, 332 F.3d 475, 478 (7th Cir. 2003) (internal quotation marks and citations omitted).

Under Federal Rule of Evidence 702(c), a qualified expert is permitted to testify only if the expert's testimony "is the product of reliable principles and methods."  *See also Daubert*, 509

U.S. at 589 ("[U]nder the Rules [of Evidence] the trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable."). This rule requires that the proffering party show by a preponderance of the evidence that the testimony "has a reliable basis in the knowledge and experience of [the relevant] discipline." *Kumho Tire Co.*, 526 U.S. at 149 (quoting *Daubert*, 509 U.S. at 592) (internal quotations omitted) (alteration in original). "The subject of an expert's testimony must be . . . more than subjective belief or unsupported speculation." *Daubert*, 509 U.S. at 589-90. As a result, "[t]he Court must exclude expert testimony that is speculative, guesswork, conjecture, and the like." *Boyar v. Korean Air Lines Co., Ltd.*, 954 F. Supp. 4, 7 (D.D.C. 1996) (citing *Joy v. Bell Helicopter Textron Inc.*, 999 F.2d 549, 569 (D.C. Cir. 1993).

### A. Dr. Buchanan Lacks the Necessary Expertise to Rebut Expert Opinions Concerning the Purpose of Act R54.

Dr. Scott Buchanan teaches political science. *See* Aug. 31, 2012 Trial Tr. at 188:11-13. He testified that he is not, however, an expert in determining legislative purpose. *See id.* at 194:7-12, 19-25. He is not an expert on public opinion research. *See id.* at 212:20-22. He is not an expert on voter fraud. *See id.* at 194:13-18. He is not an expert in history. *See id.* at 200:24-201:5. And he is not an expert in sociology. *See id.* at 201:6-7. However, in his testimony and written report, Dr. Buchanan offers opinion testimony concerning each of these subjects. That he offers these opinions to rebut another expert's opinion is of no moment. Because Dr. Buchanan admits his lack of expertise in the relevant fields forming the basis of his opinions and his unawareness of the appropriate standards for inquiry, the Court should exclude his testimony and report in their entirety.

A rebuttal expert's critique relies on a singular premise: that he or she has expertise in the relevant discipline that allows him or her to point out where the subject of the critique has

considered the wrong data or has failed to apply established principles or methods properly to the data at issue. Here, Dr. Buchanan opines that Dr. Arrington erred by failing to consider progress in South Carolina since passage of the Voting Rights Act—but Dr. Buchanan lacks the expertise necessary to know whether and to what extent that progress (which Dr. Arrington does not deny) is relevant to a properly-conducted legislative purpose determination. Dr. Buchanan also opines that Dr. Arrington should have addressed the presence of voter fraud in South Carolina; however, Dr. Buchanan lacks expertise needed to opine on the prevalence of the problem or the mechanisms by which it might be addressed. Dr. Buchanan additionally opines on the effect that Act R54 might have on voter confidence in South Carolina, but he has no expertise in public opinion research. Finally, Dr. Buchanan's series of specific critiques of Dr. Arrington's report suggest that Dr. Arrington misinterpreted some data or failed to consider other information, but again Dr. Buchanan is simply not qualified to assess whether and how—in each instance—particular data weighs on a determination of legislative intent.

### B. Dr. Buchanan Offered Opinions with No Basis in Facts or Data.

This Court has repeatedly counseled that the first step in understanding a statute's purpose is to read the text. *See, e.g.*, *AFGE TSA Local 1 v. Hawley*, 481 F. Supp. 2d 72, 83 (D.D.C. 2006) (noting that the Court presumes that "'the legislative purpose is expressed by the ordinary meaning of the words used'") (quoting *Sec. Indus. Ass'n v. Bd. of Governors*, 468 U.S. 137, 149 (1984)). Yet, Dr. Buchanan admits he never read the text of Act R54 beyond a single provision. This Court has also explained that legislative history may often shed light on legislative intent. *See, e.g.*, *United States v. Sanford Ltd.*, ___ F. Supp. 2d ___, No. 11-cv-352, 2012 WL 2930770, at *8 (D.D.C. July 19, 2012). However, except for what he gleaned from the other experts' reports, Dr. Buchanan never examined Act R54's legislative history. When assessing circumstantial evidence of discriminatory intent, this Court has endorsed a basic

framework for the analysis. *See, e.g.*, *Texas v. United States*, 831 F. Supp. 2d 244, 252-53 (D.D.C. 2011) (three-judge court) (citing *Arlington Heights*, 429 U.S. at 266). Yet unaware of that framework, and thus not surprisingly, Dr. Buchanan failed to assess any of the categories of evidence set out in that framework. Dr. Buchanan's opinions, therefore, are unfastened to any legally recognized framework and not based on sufficient data.

Indeed, Dr. Buchanan's other opinions fare no better, as they lack a reasonable basis in the data that he presents. For instance, Dr. Buchanan concludes that the history of discrimination in South Carolina has no present day effects whatsoever, apparently based in part on the single data-point that African American voter turnout exceeded white turnout in the historic 2008 general election. Buchanan Decl. at 3; *cf. Wasson*, 542 F.3d at 1176 (critiquing extrapolation from a single datum). Yet, Dr. Buchanan failed entirely to control for single elections or to conduct statistical tests. Similarly, Dr. Buchanan opined that Act R54 will enhance voter confidence and will deter forms of voter fraud other than voter impersonation, but he admitted that he had no basis in data to support those conclusions. Trial Tr. at 211:25-212:15, 217:14-24.

### III. DR. BUCHANAN CONVEYED HEARSAY WITHOUT OFFERING VALID EXPERT OPINIONS BASED ON THAT INFORMATION.

An expert may rely on hearsay to form an opinion if "experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject." Fed. R. Evid. 703. The underlying facts may be disclosed if their probative value in evaluating the expert's opinion "substantially outweighs their prejudicial effect," *id.*, but the Federal Rules of Evidence contain no exception or exclusion permitting the admission of hearsay simply because an expert has considered it. *See* Fed. R. Evid. 703, Rule Comm. Note (2000). Where an expert merely restates hearsay—rather than forming an independent opinion based on those data—such data are inadmissible. This Court "must make sure that the expert isn't being used as a vehicle

for circumventing the rules of evidence." *In re James Wilson Assocs.*, 965 F.2d 160, 173 (7th Cir. 1992).

Here the State attempts to bring substantial hearsay into the record through Dr. Buchanan's report and testimony, most notably voter participation rates, tallies of minority elected officials, and dozens of blog posts concerning allegations of voter fraud. *See* Buchanan Decl. at 4-7, 11-16, & ex.12. Because Dr. Buchanan forms no admissible opinions on the basis of these data, the data themselves cannot be considered by this Court. Notably, Dr. Buchanan cannot present to this Court dozens of allegations of voter fraud collected on a blog when he has no expertise on the prevalence of voter fraud and no basis to opine on the effect of Act R54 on potential voter fraud or voter confidence. Nor can South Carolina plausibly ask this Court to credit Dr. Buchanan's opinion in this regard when he admitted on cross-examination that he never verified any of the purported voter fraud data that was collected for him from a website. 8/31/12 Trial Tr. at 218:15-23; *see Boim v. Holy Land Found. for Relief and Dev.*, 549 F.3d 685, 703 (7th Cir. 2008) (requiring expert to establish the basis for concluding that reliance on websites was sound before considering website content). Dr. Buchanan also cannot present tables concerning voter participation when he has offered no opinion concerning the statistical significance of those figures and is not qualified to offer an opinion concerning the relevance of those figures to the final determination of legislative intent.

## CONCLUSION

For the reasons set out above, this Court should grant the United States' motion to exclude the testimony of Dr. Scott Buchanan, as well as Dr. Buchanan's August 6, 2012 report.

Date: September 7, 2012

Respectfully submitted,

RONALD C. MACHEN, JR.
United States Attorney
District of Columbia

THOMAS E. PEREZ
Assistant Attorney General
Civil Rights Division

*/s/ Bradley E. Heard*
T. CHRISTIAN HERREN, JR.
RICHARD DELLHEIM
BRADLEY E. HEARD
CATHERINE MEZA
ANNA M. BALDWIN
ERIN M. VELANDY
Attorneys
Voting Section, Civil Rights Division
U.S. Department of Justice
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530
Telephone: (202) 305-4196
Facsimile: (202) 307-3961