UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| STATE OF SOUTH CAROLINA,<br><br>       *Plaintiff*,<br><br>  v.<br><br>UNITED STATES OF AMERICA and ERIC H. HOLDER, JR., in his official capacity as Attorney General,<br><br>       *Defendants*,<br><br>  and<br><br>JAMES DUBOSE, *et al.*,<br><br>       *Defendant-Intervenors*. | Case No. 1:12-cv-203 (CKK-BMK-JDB) |

**MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTIONS TO EXCLUDE THE TESTIMONY AND REPORT OF DR. SCOTT BUCHANAN**

Plaintiff, State of South Carolina, hereby opposes Defendants' Motions to Exclude the Testimony and Report of Dr. Scott Buchanan (Docs. 270 & 271). Defendants' attacks on Dr. Buchanan's expert qualifications and opinions are unfounded and equally applicable to their own experts. Expert testimony is admissible when it is based on "scientific, technical, or other specialized knowledge" that will "help the trier of fact to understand" complex evidence. Fed. R. Evid. 702(a). Dr. Buchanan is an expert in political science, with specialties in southern politics and civil rights history—the very topics of his expert report and testimony rebutting Dr. Arrington and Dr. Burton—and Dr. Buchanan's testimony and report assist the Court by identifying flaws and inaccuracies in Defendants' expert reports. This Court should therefore deny Defendants' motions to exclude Dr. Buchanan.

**I.      Dr. Buchanan is Qualified to Offer Testimony Rebutting Defendants' Experts.**

Dr. Buchanan is qualified to testify on the topics in his report and testimony. As an expert in political science, with specialized knowledge in southern politics and civil rights history, JA_001105-06 (Buchanan Report at 1-2), Dr. Buchanan's opinions regarding South Carolina's progress with respect to minority voting rights, the flaws in Dr. Burton and Dr. Arrington's political-science-based analyses, and the existence of voter fraud fall squarely within his academic expertise, *see* 8/31/12 Tr. at 188:12-16 (Buchanan). Dr. Buchanan is "knowledgeable concerning the state of southern politics in the mid-20th century to current day," which enables him to offer expert testimony on South Carolina's progress in voting rights. JA_001106 (Buchanan Report at 2).[1] Defendants do not dispute this. And as a professor steeped in the social sciences, Dr. Buchanan has the necessary expert training and knowledge to identify where Dr. Arrington and Dr. Burton have failed to follow their own social science methodologies by ignoring relevant evidence, and to aggregate and synthesize evidence of voter fraud from public sources. Dr. Buchanan's rebuttals, therefore, have "a reliable basis in the knowledge and experience of [the relevant] discipline." U.S. Mem. In Support of Mot. to Exclude at 5 (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999) (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592 (1993))).

Social science expertise, not knowledge concerning of doctrine, properly forms the "standards for inquiry" of non-lawyer experts. *See, e.g.*, *Aguilar v. Int'l Longshoremen's Union*

---

[1] In addition, Defendants waived the opportunity to challenge Dr. Buchanan's qualifications as an expert, and the Court has already admitted Dr. Buchanan as an expert. During the parties' pre-trial conference with the Court, all parties represented that they would not be challenging the qualifications of each other's experts *qua* experts. 8/23/12 Tr. at 62:22-64:9. Accordingly, the Court's August 24 Order at 3 (Doc. 239) stated that "[a]ll proposed expert witnesses shall be deemed admitted as experts." And it was evident from the United States' *voir dire* at trial that the content of their objections were explored during Dr. Buchanan's deposition, which occurred before the pre-trial conference.

*Local #10*, 966 F.2d 443, 447 (9th Cir. 1992).  Dr. Buchanan is not an attorney, and he does not pretend to be one.  Dr. Burton and Dr. Arrington are not attorneys either.  All three are social science professors.  Thus, Dr. Buchanan's lack of intimate familiarity with the legal doctrines that the parties are tasked with briefing, and this Court is tasked with applying, does not impugn his ability to rebut the reports and testimony of other social science professors, on topics concerning voting rights in the south that fit squarely with his core areas of expertise.

Defendants' suggestion otherwise is based on their view that social science professors can present themselves as "experts on legislative purpose" and launder dubious legal analysis into the record.  *See* Mem. in Support of SC's Mot. to Exclude the Testimony of Theodore Arrington and Orville Burton (Doc. 165-1) ("SC Mot. to Exclude").  But that view is incorrect.  *See, e.g.*, *Sec. & Exch. Comm'n v. Johnson*, 525 F. Supp. 2d 70, 78-79 (D.D.C. 2007) (question of intent is "for the jury, rather than for an expert"); *Lippe v. Bairnco Corp.*, 288 B.R. 678, 688 (S.D.N.Y. 2003) (excluding expert testimony that the "real purpose" of certain transactions was to hide assets from creditors); *Highland Capital Mgmt. v. Schneider*, 379 F. Supp. 2d 461, 469 (S.D.N.Y. 2005) (experts may not offer opinions about whether the defendant was "likely aware" of certain facts or "concerned" about something).

Dr. Buchanan's testimony assists this Court by demonstrating that Dr. Arrington and Dr. Burton failed to consider relevant evidence within the parameters of their own supposed methodologies.  Testimony on the State's progress in voting rights, JA_001108-123 (Buchanan Report at 4-19), specific political science evidence that Dr. Arrington and Dr. Burton overlook, *see id.* at JA_001124-33 (20-29), and methodological flaws in Dr. Arrington and Dr. Burton's social science analysis, *see id.* at JA_001133-46 (29-42), does not require Dr. Buchanan to draw the legal conclusions committed to this Court.  Instead, it requires him to bring his skills in the

social sciences and his knowledge concerning southern politics and civil rights history to bear on the incomplete data sets and flawed conclusions presented by Defendants' experts. *See id.* at JA_001146-48 (42-44).

His report and his testimony do just that. He presents information, such as voting rights history and the election of numerous minority candidates to public office in South Carolina, that Dr. Arrington and Dr. Burton ignored while considering similar data. Because expertise in discerning "legislative purpose" is possessed by lawyers and judges, not professors in political and computer science, Dr. Buchanan cannot be faulted for hewing more appropriately to his own training and knowledge in the social sciences.

## II. Defendants' Criticisms of Dr. Buchanan Apply to Their Own Experts.

All of Defendants' criticisms of Dr. Buchanan apply with equal or greater force to the testimony offered by Dr. Arrington and Dr. Burton.

*First*, Dr. Arrington and Dr. Burton are not qualified to testify on legislative purpose. Neither of these experts have any legal training. *See* JA_001454-71 (Arrington CV); JA_001588-1607 (Dr. Burton CV); *Highland Capital Mgmt.*, 379 F. Supp. 2d at 470-72 (excluding testimony in which the expert merely "states his opinion concerning the law governing securities fraud and concludes that the conduct of certain defendants and non-parties violated that law"). And neither is permitted to opine on "what *actually* motivated the legislators." *New York v. United States*, 874 F. Supp. 394, 399 (D.D.C. 1994) (three-judge court); *Johnson*, 525 F. Supp. 2d at 78-79; *Lippe*, 288 B.R. at 688. Dr. Arrington and Dr. Burton thus possess no training or experience—other than serial appearances in Voting Rights Cases— qualifying them to say any more of the General Assembly's purpose than Dr. Buchanan.

4

*Second*, Dr. Arrington and Dr. Burton reach their conclusions based on selective reliance on publicly available sources and hearsay. If "Dr. Buchanan cannot present to this Court dozens of allegations of voter fraud" based on extensive internet research, US Mot. to Exclude at 8, then Dr. Arrington and Dr. Burton cannot present the Court with their potpourri of speeches, legislative history, Facebook and Twitter posts, newspaper articles, press releases, and other materials. *See, e.g.*, *In re Fosamax Prods. Liab. Litig.*, 645 F. Supp. 2d 164, 192 (S.D.N.Y. 2009) (expert may not simply "read, selectively quote from, or 'regurgitate' the evidence"). At best, what Dr. Arrington and Dr. Burton offer to this court is an "advocacy-based interpretation of [selected] documents in the record." *Fisher v. CIBA Specialty Chems. Corp.*, 238 F.R.D. 273, 281 (S.D. Ala. 2006); *see also In re Fresh Del Monte Pineapples Antitrust Litig.*, No. 04-1628, 2009 WL 3241401, at *16 (S.D.N.Y. Sept. 30, 2009) (expert may not "recite selective facts in the record and then offer[] his own legal conclusion[]"). Further, their reports contain the same out-of-court hearsay drawn from public sources that Defendants criticize Dr. Buchanan for relying upon. *See, e.g.*, JA_001553-56 (Burton Report at 15-18 ("Racially-Charged Statements or Conduct by Sponsors and Advocates of Voter ID")) (relying on out-of-court statements made by others, including speeches, newspaper articles, press releases, flyers, license plate slogans, and posts on Facebook and Twitter); JA_001405-08 (Arrington Report at 25-28) (citing numerous public statements from speeches, newspaper articles, and Twitter).

In truth, Dr. Arrington and Dr. Burton's reliance on public sources is no better, and in fact much worse, than Dr. Buchanan's compilation of voter fraud allegations from credible sources. *See* JA_001127 (Buchanan Report at 23) ("Since little academic research exists on the subject of voting fraud, I choose, in forming my rebuttal opinion, to rely upon sources of voter fraud as reported either through the media, through a government report, . . . and through an

5

investigation conducted by a Philadelphia City Commissioner."). While Dr. Arrington and Dr. Burton offer their selections of questionable internet sources and hearsay to accuse state legislators of harboring racist intent, Dr. Buchanan offers his evidence to provide the Court with a more complete, accurate picture of relevant conditions in South Carolina and nationwide.

*Third*, Dr. Arrington and Dr. Burton utilize no more reliable methodologies than Dr. Buchanan.  Dr. Arrington and Dr. Burton selectively aggregate public sources and record evidence, then summarily conclude that Act R54 was adopted for a discriminatory purpose.  Dr. Arrington's closest approximation to a methodological statement is that "[n]ot all legislators need to have acted with discriminatory intent, *just enough to make the difference*."  JA_001387 (Arrington Rep. at 7) (emphasis added).  But he says nothing of what actually "make[s] the difference."  He merely concludes *ipse dixit* that the difference has been made.  For his part, Dr. Burton sets forth a litany of non-exclusive, non-dispositive "factors" that, "taken together," can indicate a discriminatory purpose.  JA_001539-41, JA-001573-76 (Burton Rep. 1-3, 35-38).  But he gives no indication what mixture of which factors is sufficient to reveal a discriminatory purpose, other than his assurance that such a blend is present here.

Dr. Buchanan's rebuttal testimony demonstrates where Dr. Arrington and Burton's data and conclusions are incorrect or incomplete *within their own purported methods*.  Thus, if Dr. Buchanan is improperly "eyeballing" information to reach his conclusions, 8/31/12 Tr. 203:21-23, so are Dr. Arrington and Dr. Burton, *see* SC Mot. to Exclude at 9-11.  Defendants criticisms are thus either off-base or self-defeating.

## CONCLUSION

As a political scientist, with specialties in southern politics and civil rights history, Dr. Buchanan is an expert qualified to rebut the conclusions offered by Dr. Arrington and Dr.

6

Burton, which focus on the political and historical events leading up to and surrounding enactment of R54.  That Dr. Buchanan, like Dr. Arrington and Dr. Burton, is not an attorney trained in analyzing legal doctrine and legal sources to determine legislative intent says no more than that "legislative purpose" is not a proper field of expert testimony.  Indeed, all of Defendants' criticisms apply alike to their own experts.  For these reasons, the Court should deny Defendants' Motions to Exclude the Testimony and Report of Dr. Buchanan.

Respectfully submitted,

s/H. Christopher Bartolomucci

| | |
|---|---|
| Hon. Alan Wilson | Paul D. Clement (DC Bar No. 433215) |
| ATTORNEY GENERAL OF SOUTH CAROLINA | H. Christopher Bartolomucci (DC Bar No. 453423) |
| Rembert Dennis Building, Room 519 | |
| 1000 Assembly Street | Stephen V. Potenza (admitted *pro hac vice*) |
| Columbia, SC 29201 | Jeffrey M. Harris (admitted *pro hac vice*) |
| (803) 734-3970 | Brian J. Field (DC Bar No. 985577) |
| | D. Zachary Hudson (admitted *pro hac vice*) |
| | Michael H. McGinley (DC Bar No. 1006943) |
| | BANCROFT PLLC |
| | 1919 M Street, N.W., Suite 470 |
| | Washington, D.C. 20036 |
| | (202) 234-0090 |
| Karl S. Bowers, Jr. (admitted *pro hac vice*) | |
| WOMBLE CARLYLE SANDRIDGE & RICE | H. Christopher Coates (admitted *pro hac vice*) |
| 1727 Hampton Street | LAW OFFICE OF H. CHRISTOPHER COATES |
| Columbia, SC 29201 | 934 Compass Point |
| (803) 454-6504 | Charleston, SC 29412 |
| | (843) 609-7080 |
| Dated: September 19, 2012 | *Counsel for the State of South Carolina* |

**CERTIFICATE OF SERVICE**

I hereby certify that on September 19, 2012, I filed the foregoing memorandum with the Court's electronic filing system, which will provide notice to all counsel of record.

<u>s/H. Christopher Bartolomucci</u>

H. Christopher Bartolomucci
(D.C. Bar No. 453423)
