IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| STATE OF SOUTH CAROLINA,<br><br>    Plaintiff,<br><br>  v.<br><br>UNITED STATES OF AMERICA, and ERIC HIMPTON HOLDER, JR., in his official capacity as Attorney General of the United States,<br><br>    Defendants,<br><br>JAMES DUBOSE, *et al.*,<br><br>    Defendant-Intervenors. | Civil Action No.  1:12-CV-203<br>(CKK-BMK-JDB)<br>Three Judge Court |

### REPLY MEMORANDUM IN SUPPORT OF THE UNITED STATES' MOTION TO EXCLUDE EXPERT TESTIMONY

The United States does not dispute that Dr. Scott Buchanan may be an expert in political science with a specialty in southern politics.  That expertise, however, is simply not relevant to the question before this Court:  whether Act R54 has an impermissible discriminatory purpose.  Nor can Dr. Buchanan assist this Court in assessing the testimony offered by Dr. Theodore Arrington, as Dr. Buchanan admittedly lacks expertise necessary to determine what evidence is relevant to an assessment of legislative purpose. On the other hand, the State's renewed attack on Dr. Arrington's expertise and testimony serves only to illustrate the failings of Dr. Buchanan's proffered testimony.  For these

1

reasons, and the reasons set out in the United States' memorandum in support of the instant motion, this Court should exclude the report and testimony of Dr. Buchanan.

I.     **DR. BUCHANAN LACKS THE EXPERTISE NECESSARY TO ASSESS THE RELEVANCE OF DATA TO LEGISLATIVE PURPOSE.**

South Carolina's essential defense of Dr. Buchanan is that any political scientist may lodge general methodological critiques of social science testimony. *See* S.C. Br. at 2-4 (Doc. 291). Had Dr. Buchanan found basic methodological flaws—such as a failure to perform statistical significance tests—this would be a valid point.[1] However, the State's brief makes clear that Dr. Buchanan's core criticism is that Dr. Arrington purportedly "ignor[ed] relevant evidence," including allegations of voter fraud. *Id.* at 2; *see also id.* at 3 (asserting that Dr. Arrington "failed to consider relevant evidence within the parameters" of his methodology); *id.* at 6 (claiming that Dr. Arrington's data are incomplete). Knowledge of the political science subfield of legislative process and the study of legislative purpose is necessary for a witness to opine properly on whether particular information is relevant to an assessment of legislative intent, and Dr. Buchanan has repeatedly avowed his lack of expertise in those fields. *See, e.g.*, 8/31/12 Trial Tr. at 194:7-12, 19-25 (Buchanan). Dr. Buchanan's unawareness of the scope of information relevant to a methodologically sound assessment of legislative purpose is best illustrated

---

[1] *Cf.* 8/31/12 Tr. at 202:9-12 (Buchanan) ("Q. I want to ask you, did you perform any significance testing on these differences that you have portrayed in this exhibit? A. No, I did not. I simply presented the election turnout data itself.").

2

by his basic failure to read all of Act R54, its legislative history, or definitive authority delineating a proper intent analysis . *See id.* at 194:19-195:2-8.

Regardless of whether Dr. Buchanan is an "expert[] *qua* expert[]," *see* S.C. Br. at 2 n.1, he may not opine outside of his field of expertise. *See, e.g.*, *Calhoun v. Yamaha Motor Corp., U.S.A.*, 350 F.3d 316, 322 (3d Cir. 2003) ("An expert may be generally qualified but may lack qualifications to testify outside his area of expertise."); *see also White v. Ford Motor Co.*, 312 F.3d 998, 1008-09 (9th Cir. 2002) ("A layman, which is what an expert witness is when testifying outside his area of expertise, ought not to be anointed with ersatz authority as a court-approved expert witness for what is essentially a lay opinion.").

Nonetheless, and despite their current protestations, South Carolina offered Dr. Buchanan precisely to opine on the issue of legislative intent. *See* 8/31/12 Tr. at 198:16-199:15 (Dr. Buchanan opining as to legislative intent and counsel's declaration that Dr. Buchanan may do so despite his lack of expertise). Professor Buchanan's lack of expertise in determining legislative intent – the sole issue before this court for which his testimony could be relevant – is uncontested. His opinions should be stricken *in toto*.

## II. DR. BUCHANAN'S ANALYSIS IS DIFFERENT IN KIND AND INFERIOR IN QUALITY TO DR. ARRINGTON'S EXPERT TESTIMONY.

Having failed to establish that Dr. Buchanan has the expertise necessary to opine on what constitutes a proper analysis of legislative intent, South Carolina once again attacks Dr. Arrington's methodology, rehashing arguments that this Court rejected when

3

denying the State's motion to exclude Dr. Arrington's testimony. *See* Order (Aug. 22, 2012) (Doc. 226). *Compare* S.C. Br. at 3-6, *with* Memorandum in Support of Dr. South Carolina's Motion to Exclude the Testimony of Theodore Arrington and Orville Burton at 3, 8, 10 (Aug. 13, 2012) (Doc. 165-1) (repeating identical string-citations and quotations from Dr. Arrington's report). By once again leveling legal arguments against Dr. Arrington, the State lends no support to the reliability of Dr. Buchanan's report or proffered testimony.

The United States met and rebutted each of South Carolina's attacks in a prior brief. *See* Mem. in Opp. to South Carolina's Mot. to Exclude Testimony of Dr. Theodore Arrington (Aug. 20, 2012) (Doc. 207). Essentially, political scientists may offer useful testimony concerning legislative purpose by placing legislator communications and the legislative record in the relevant context. *See id.* at 4 (quoting Trial Tr. at 3, *Texas v. United States*, No. 11-cv-1303 (D.D.C. Jan. 17, 2012 a.m.); *see also, e.g.*, *Garza v. Cnty. of Los Angeles*, 918 F.2d 763, 767 n.1 (9th Cir. 1990) (crediting expert testimony concerning intent). Questions of legislative intent are therefore distinguishable from opinion testimony concerning an individual's intent to defraud. *See McCreary Cnty. v. ACLU of Ky.*, 545 U.S. 844, 862 (2005) (noting that scrutinizing legislative purpose does not require "judicial psychoanalysis of a drafter's heart of hearts").[2] The State's claim

---

[2] The State's quotation of *New York v. United States*, 874 F. Supp. 394 (D.D.C. 1994) (three-judge court), is misleading at best. *See* S.C. Br. at 4. *New York* does not address expert evidence. Nor does an inquiry that addresses collective legislative intent,
(Cont'd…)

that legal training is needed to examine legislative purpose, *see* S.C. Br. at 4, baselessly denigrates the academic field of study most closely aligned with legislative processes. The utility of political science expertise beyond legal training—and particularly of the study of legislative processes—is well-established by courts' repeated reliance on such testimony.  *See, e.g.*, *Bone Shirt v. Hazeltine*, 336 F. Supp. 2d 976, 1005-06 1034 (D.S.D. 2004); *cf., e.g.*, *Weston v. Wash. Metro. Area Transit Auth.*, 78 F.3d 682, 684 n.4 (D.C. Cir. 1996) (noting that strictly legal analysis will fall outside the proficiency of an expert witness).[3]

In applying political science methodology and analyzing the legislative process preceding the enactment of Act R54, Dr. Arrington relied on hearsay materials, *see* S.C. Br. at 5, but the speeches, legislative history, and press releases he drew from are the primary sources that political scientists "would reasonably rely on . . . in forming an opinion" concerning legislative intent.  Fed. R. Evid. 703.  On the other hand, Dr. Buchanan relied on a variety of hearsay materials that—because of his lack of expertise—he is unable to tie to the legislative process.  Moreover, there is a qualitative difference in the reliability of state-issued legislative history and the unproven and

---

*see New York*, 874 F. Supp. at 399, turn on the impetus of any one legislator, *see* Order at 2-3, *Texas v. Holder*, No. 1:12-cv-128 (D.D.C. May 21, 2012) ("Section 5 is 'directed at' . . . and 'turns on' . . . overall legislative purpose and not the purpose or motivation of individual actors.").

[3] The State essentially concedes this point elsewhere in its brief.  *See* S.C. Br. at 3 (arguing that Dr. Buchanan's critique of Dr. Arrington's testimony "does not require Dr. Buchanan to draw the legal conclusions committed to this Court").

5

unverified criminal allegations of voting-related crimes randomly derived from untested internet sources by an unknown assistant provided by a third party. *See Boim v. Holy Land Found. for Relief and Dev.*, 549 F.3d 685, 703 (7th Cir. 2008) (requiring an expert to establish the basis for reliance on hearsay of questionable veracity); *cf.* Fed. R. Evid. 803(8) (excepting public records from the rule against hearsay); 8/31/12 Tr. at 215:15-23 (Buchanan). Dr. Buchanan has no expertise on voter fraud, *see* 8/31/12 Trial Tr. at 194:13-18 (Buchanan), and relied entirely on counsel for South Carolina to research the issue, *see id.* at 218:15-23. He could not even opine on whether an expert in voter fraud would rely on such third-party research because of his admitted lack of expertise. *See id.* at 218:24-219:2. A purported expert may not simply restate data collected by a third party concerning a subject on which he has no expertise. *See* Fed. R. Evid. 703, Rule Comm. Note (2000); *In re James Wilson Assocs.*, 965 F.2d 160, 173 (7th Cir. 1992).

      The State's superficial attack on Dr. Arrington's methodology is perhaps its most self-defeating. The study of legislative intent is qualitative, and South Carolina merely takes issue with Dr. Arrington's ultimate judgment—reflected and explained in his lengthy report—that the materials he reviewed indicate the presence of a discriminatory purpose. There can be no question of the strong "qualitative tradition" in political science, *see, e.g.*, Am. Pol. Sci. Ass'n, *Qualitative and Multi-Method Research*, *at* http://www.apsanet.org/content_5372.cfm, and Dr. Arrington need not quantify the evidence in order to reach his conclusion. By contrast, Dr. Buchanan has professed ignorance of the appropriate methodology; thus, he has merely assumed that the evidence

he presents—such as South Carolina's racial progress since 1965—is relevant to the inquiry.  Such assumptions are baseless.  Because Dr. Buchanan admittedly lacks expertise in the study of legislative intent, he could not illustrate any incorrect or incomplete conclusions within Dr. Arrington's methods.  For that precise reason, Dr. Buchanan lacks the "qualification and methods" needed to provide testimony useful to this Court, and his testimony and report must be excluded from evidence.  *United States v. Smith*, 640 F.3d 358, 365 (D.C. Cir. 2011) (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993)).

## **CONCLUSION**

For the reasons set out above, this Court should grant the United States' motion to exclude the testimony of Dr. Scott Buchanan, as well as Dr. Buchanan's August 6 Report.

Date:  September 24, 2012

                                              Respectfully submitted,

RONALD C. MACHEN, JR.                THOMAS E. PEREZ
United States Attorney                      Assistant Attorney General
District of Columbia                        Civil Rights Division

                                              */s/ Bradley E. Heard*
                                              T. CHRISTIAN HERREN, JR.
                                              RICHARD DELLHEIM
                                              BRYAN L.SELLS
                                              BRADLEY E. HEARD
                                              (DC Bar No. 458309)
                                              CATHERINE MEZA
                                              ANNA M. BALDWIN
                                              (DC Bar No. 998713)
                                              ERIN M. VELANDY
                                              Attorneys
                                              Voting Section, Civil Rights Division

>U.S. Department of Justice
>950 Pennsylvania Avenue, N.W.
>Washington, D.C. 20530
>Telephone: (202) 305-4196
>Facsimile: (202) 307-3961